■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DELORESE WRIGHT, Appellant. — Judgment, Supreme Court, New York County (Myers, J. on suppression hearing; Denzer, J., at trial, sentence and resentence), rendered

March 12, 1979 on original sentence, and May 11, 1981 on resentence, convicting defendant, after trial, of criminal possession of a controlled substance in the second and fifth degrees (Penal Law, § 220.18, former § 220.09), and sentencing her thereon, is affirmed. The suppression hearing Judge, after an evidentiary hearing, denied suppression both of the physical evidence and of appellant's second statement. The physical evidence consisted of a pocketbook in which narcotics were found. The hearing Judge found that the pocketbook was on the floor in the bar in a public place, and that after inquiring as to whom the pocketbook belonged to with no response, "it was the duty of the Police, it certainly was reasonable, for the Police to take the pocketbook in hand and to inventory it and to try to find the owner and it was certainly reasonable for them to look inside and, of course, once they looked inside, they found the contraband." As to the second statement made by appellant after full *Miranda* warnings, the hearing Judge found "that the statements made at the station house were not involuntary by reason of coercion, deception or other pernicious conduct on the part of the police," and he therefore denied the motion to suppress on the authority of *People v Jennings* (40 AD2d 357, affd on opn below 33 NY2d 880; connected case *Jennings v Casscles,* 568 F2d 229). Giving appropriate deference to the findings made by the hearing Judge, we cannot say that the evidence did not support these findings. We have considered appellant's remaining claims of error and we find them to be without merit. Concur — Murphy, P. J., Sandler, Silverman and Milonas, JJ.

Carro, J., dissents in a memorandum as follows: "Reasonableness" is a conclusion of law totally separate from the lower court findings of fact to which I, as well as the majority, give "appropriate deference." An officer testified that 10 or more policemen, after gunshots had been heard, entered the bar looking for the gun wielder and/or weapon. The officer further testified that in looking around he found a pocketbook lying in a corner behind the counter, with the closest person to it 8 to 10 feet away. Since the pocketbook was neither hard nor heavy the officer knew as soon as he picked it up that there was no gun hidden in it. He should have put it down at that point. "It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is '*per se* unreasonable * * * subject only to a few specifically established and well-delineated exceptions.' *Katz v United States,* 389 U.S. 347, 357" (*Schneckloth v Bustamonte,* 412 US 218, 219). "Application of sound Fourth Amendment principles to the facts of this case produces a clear result. The search here went far beyond the [defendant's] person and the area from within which [she] might have obtained either a weapon or something that could have been used as evidence against [her]. There was no constitutional justification, in the absence of a search warrant, for extending the search beyond that area. The scope of the search was, therefore, 'unreasonable' under the Fourth and Fourteenth Amendments, and the [defendant's] conviction cannot stand." (*Chimel v California,* 395 US 752, [per Stewart, J.].) As the First Circuit observed in *United States v Micheli* (487 F2d 429, 431), "A focus on actual physical possession is too narrow * * * in that it would leave vulnerable many personal effects, such as wallets, purses, cases, or overcoats, which are often set down upon chairs or counters, hung on racks, or checked for convenient storage. The Fourth Amendment's basic interest in protecting privacy * * * and avoiding unreasonable governmental intrusions * * * is hardly furthered by making its applicability hinge upon whether the individual happens to be holding or wearing his personal belongings after he chances into a place where a search is underway. The rudest governmental intrusions into someone's private domain may occur by way of a

search of a personal belonging which has been entrusted to a nearby hook or shelf. The practical result of such a rule may be to encourage the government to obtain search warrants for places frequented by suspicious individuals, such as infamous bars, then lie in wait for those individuals to enter and make themselves comfortable." It "defies ordinary common sense" that a person who is concealing contraband would "consent" to a search. (*United States v Viale,* 312 F2d 595, 601; see, also, *Higgins v United States,* 209 F2d 819, 820.) Here there was an "utter lack of any articulated or unarticulated suspicions" (*United States ex rel. Coleman v Smith,* 395 F Supp 1155, 1158), and no arrest had been made. Since the standards of probable cause for an arrest and for a search are alike (*Spinelli v United States,* 393 US 410), absent an arrest there was no imaginable reason for the officer to be concerned with the pocketbook once his feeling it determined that no weapon was concealed in it. I "see no reason why, simply because some interference with an individual's privacy and freedom of movement has lawfully taken place, further intrusions should automatically be allowed despite the absence of a warrant that the Fourth Amendment would otherwise require." (*Chimel v California,* 395 US 752, 767, n 12, *supra.*) For at least 15 years it has been a maxim of constitutional law that "[T]he Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection * * * But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." (*Katz v United States,* 389 US 347, 351-352, *supra.*) The pocketbook here was just such an assertion of personal privacy, it should not have been searched and the contraband seized should have been suppressed. Secondly, appellant's alleged statement made at the precinct should also have been suppressed. There was a "single continuous chain of events" beginning with the illegal questioning on the way to the station house, which improperly deprived appellant of her constitutional right. (*People v Chapple,* 38 NY2d 112, 114 [relying on *Westover v United States,* 384 US 436].) The fact that *Miranda* warnings were administered at the precinct does not provide the kind of "definite, pronounced break in the interrogation" necessary to return the defendant "to the status of one who is not under the influence of questioning." (*People v Chapple,* 38 NY2d 112, 115, *supra.*) "Later is too late". (*Supra,* p 115.) For both reasons, as a matter of law on the facts, the judgment should be reversed and the indictment dismissed.