◼ In the Matter of ANTOINE W., a Person Alleged to be a Juvenile Delinquent, Appellant.—Dispositional order of the Family Court, New York County (Mary Bednar, J.), entered on or about June 21, 1989, whereby appellant was adjudicated a juvenile delinquent and placed with the New York State Division for Youth, Title III, for 12 months, after a fact-finding determination that the juvenile had committed acts which, if committed by an adult, would constitute first degree criminal possession of a controlled substance, reversed, on the law, the adjudication vacated, and the petition dismissed, without costs.

Because the acts of appellant in the Port Authority Bus Terminal on the evening of May 29, 1989, as set forth in the dissent, at no time reached the level which could sustain "a founded suspicion that criminal activity is present" *(People v De Bour,* 40 NY2d 210, 215; *see also, People v Cantor,* 36 NY2d 106; *cf., People v Rosemond,* 26 NY2d 101), the police inquiry was unlawful, the fruits of the ensuing search must be suppressed, and the delinquency proceeding dismissed *(People v*

*Cantor, supra).* The actions of this 15-year-old youth (permitting others to board a bus ahead of him on two occasions, looking around him while doing so, and then patronizing a snack bar) were utterly innocent, and consistent with a situation familiar to anyone who has gone to an airport or waited on a movie line: that appellant was expecting to meet a traveling companion, and when the latter was late, sought refreshment to help pass the time. It could hardly be a suspicious circumstance that appellant was "looking around" (for the latecomer?) or that he possessed a bag at a bus depot. Indeed, a narcotics courier would probably behave quite differently, i.e., he would seek to board a bus as quickly and inconspicuously as possible to get on with his illegal mission. Thus, there was no predicate for a common-law inquiry of defendant, who, when the police accosted him, was clearly the target of police interest based on nothing at all. In *People v La Pene* (40 NY2d 210, 223), the companion case to *De Bour (supra)*, the Court of Appeals delineated three levels of police interaction with our citizenry as follows: "The minimal intrusion of approaching to request information is permissible when there is some objective credible reason for that interference not necessarily indicative of criminality *(People v De Bour, supra)*. The *next degree, the common-law right to inquire, is activated by a founded suspicion that criminal activity is afoot and permits a somewhat greater* intrusion in that a policeman is entitled to interfere with a citizen to the extent *necessary to gain explanatory information,* but short of a forcible seizure *(People v Cantor,* 36 NY2d, at p 114, *supra; People v Rosemond,* 26 NY2d 101; *People v Rivera,* 14 NY2d 441, 446, and authorities cited therein).* Where a police officer entertains a reasonable suspicion that a particular person has committed, is committing or is about to commit a felony or misdemeanor, the CPL authorizes a forcible stop and detention of that person (CPL 140.50, subd 1; see *Terry v Ohio,* 392 US 1; *People v Cantor, supra)."* (Emphasis added.)

Clearly this second level of intrusion (which is what took place here) had no justification under applicable law. The citation to *People v De Bour (supra,* at 213) by the dissent has reference only to an "informational" approach to a citizen by the police (e.g., "where's the fire?" or "which way did he run?" —a first level inquiry). On the contrary, the police here by their own testimony were not gathering "information", they were closing in on defendant as a suspected lawbreaker. We also hold that this issue was adequately preserved for appellate review both in appellant's motion papers before Family

Court and by the cross-examination of Officer Richard Canelly on this score, all of which gave the prosecutorial agency a full opportunity at the hearing to rebut the contention if they could do so *(see, People v Pettiford,* 78 AD2d 823; *cf., People v Tutt,* 38 NY2d 1011).

Since the foregoing is dispositive of this appeal, it is unnecessary to reach the question on which the dissent turns, namely whether appellant voluntarily consented to the search of his bag. Suffice to say, were we to address this issue, we would hold that appellant's "consent" was involuntary and constituted "a yielding to overbearing official pressure" *(People v Gonzalez,* 39 NY2d 122, 124) and that at a minimum the conduct of the two police officers prior to their search of the bag amounted to "[o]fficial coercion, even if deviously subtle". *(Supra,* at 124.) Concur—Carro, Milonas and Wallach, JJ.

Kupferman, J. P., and Smith, J., dissent in a memorandum by Smith, J., as follows: I dissent because there was sufficient evidence of consent to search the bag in which cocaine was found.

The facts are briefly stated. On the night of May 29, 1989 Detectives Richard Canelly and Henry Garry were on duty, assigned to a narcotics intervention team in the Port Authority Bus Terminal in New York County. Their assignment was to stop or attempt to stop the flow of illegal drugs by bus from New York City to other East Coast cities. Around 8:00 P.M. Detective Canelly observed the defendant outside of a bus platform waiting for a bus. He permitted other people to pass him and to board the bus ahead of him. As defendant did this he kept looking around. After approximately 10 minutes the defendant left the area. He was carrying a blue bag. About 9:20 P.M. the defendant returned to the same boarding area and repeated his earlier conduct, allowing people to board the bus ahead of him and looking around. Defendant then walked away and went into a snack bar.

Detective Canelly approached the defendant and asked to speak with him, informing the defendant that he was part of a narcotics intervention team. He asked the defendant where he was going and the defendant replied that he was going to Delaware. Detective Canelly asked the defendant if the bag next to him was his. Defendant replied no, that it belonged to a friend. *(Compare, People v Wright,* 88 AD2d 879, 880 [1st Dept 1982], *affd* 58 NY2d 797 [1983] [Police officer who saw bag on floor of a bar and received no response to question of ownership could pick it up and open it. Resulting arrest and conviction for cocaine possession upheld].) Detective Canelly

asked if he could search the bag and the defendant replied that he could. Some 40 bags of cocaine were found and the defendant was arrested.

The defendant testified that when Detective Canelly asked him where he was going, he did not respond. The said detective asked if the bag was his and defendant replied "no at first." When the detective asked him if he could look in the bag, he said "what for." Detective Canelly asked him again "can I search your bag * * * cause I'm going to search it anyway." Defendant testified he felt he had no choice and consented. He further testified that he was not told he could refuse to consent. Defendant also stated that he knew the bag contained drugs.

Defendant argues that the drugs should have been suppressed because his conduct did not provide a founded suspicion which justified questioning by the police and because he did not voluntarily consent to the search.

The People argue that the issue of the stop has not been preserved for review and that the defendant voluntarily consented to the search.

While the defendant did assert in his motion papers that the police had no right to stop him, the issue was not pursued at the hearing and thus has not been preserved for review. If the issue were reached, I would find that the police had a basis for approaching the defendant. (See, People v De Bour, 40 NY2d 210 [1976].)

Contrary to the view of the majority, the case of People v De Bour (40 NY2d 210, supra) explicitly supports the approach of the defendant here. In De Bour the police stopped a man who had simply crossed the street when he was within 30 or 40 feet of the police officers. Subsequent inquiry and observation led to an arrest and conviction for possession of a gun, a conviction which the Court of Appeals upheld. In De Bour, the Court of Appeals stated that the police could approach a citizen on the street and ask for information even without an indication of criminality. The court stated: "This case raises the fundamental issue of whether or not a police officer, in the absence of any concrete indication of criminality, may approach a private citizen on the street for the purpose of requesting information. We hold that he may. The basis for this inquiry need not rest on any indication of criminal activity on the part of the person of whom the inquiry is made but there must be some articulable reason sufficient to justify the police action which was undertaken." (40 NY2d, supra, at 213.)

Defendant also voluntarily consented to the search. While he was 15 years of age, he was not a stranger to the criminal justice system and had been adjudicated a juvenile delinquent at age 13 for stealing a chain. In addition, the approach of the officers was not overbearing. *(See, People v Gonzalez,* 39 NY2d 122 [1976].)