■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERTO IRIZARRY, Appellant.—Judgment of the Supreme Court, New York County (Ira Beal, J., at suppression hearing; Leslie C. Snyder, J., at plea and sentence), rendered December 15, 1989, convicting defendant, upon his plea of guilty, of criminal possession of a controlled substance in the second degree and sentencing him to an indeterminate term of imprisonment of from five years to life, reversed, on the law, the plea is vacated, the motion to suppress is granted, and the indictment is dismissed. The matter is remitted to the trial court for the purpose of entering an order in favor of the accused pursuant to CPL 160.50 not less than 30 days after service of a copy of this court's order upon the respondent, with leave during this 30-day period to respondent to move and seek any further stay of the implementation of CPL 160.50 as in the interest of justice is required.

At approximately 7:30 P.M. on August 9, 1989, Police Officer Thomas Piccirillo observed defendant walking around the waiting area of Penn Station. Defendant was carrying a black and blue nylon bag and kept looking behind him as he walked around the station. Piccirillo's attention was diverted but he again focused on defendant at 8:20 P.M., when he saw defendant speaking to another man who then left the area. Piccirillo continued to watch defendant who walked over to a railing across from the departure board and glanced at the announcements. When defendant put his bag on the ground and took two or three steps away from it, Piccirillo decided to approach him because he found defendant's behavior in leaving his bag six to eight feet away from where he was standing unusual since Penn Station is a high-crime area.

After defendant returned to where his bag was lying on the ground, Piccirillo approached and identified himself as a police officer. Another officer stepped behind defendant. When Piccirillo asked defendant if he could speak to him, defendant agreed and told Piccirillo, in response to his questioning, that he was going to Philadelphia but lived in Allentown, Pennsylvania. Piccirillo did not recall whether defendant produced a train ticket at this time. However, he testified that it was determined at some point that defendant did in fact have a train ticket for Philadelphia and that he was from Allentown, Pennsylvania.

Piccirillo asked defendant for identification and although he did not recall whether any identification was actually produced, he did remember that defendant's hands were shaking when he took out his wallet. Piccirillo informed defendant that he was a narcotics investigator and, that with defendant's permission, he would like to check his bag for narcotics. Piccirillo testified that defendant said "sure, go ahead", so he unzipped the bag, moved an article of clothing and discovered a package later determined to contain a large quantity of cocaine. While handcuffed and en route to police headquarters located on another level of Penn Station, defendant volunteered that he was working for a secret agent. When Piccirillo asked defendant if he meant a secret service agent, defendant replied that he did. Defendant thereafter was advised of his *Miranda* rights in a holding pen at the station. He indicated that he understood his rights and again told Piccirillo that he was working for a secret service agent and offered to provide the agent's name and telephone number.

After the Supreme Court denied defendant's motion to suppress the narcotics and his statements, defendant pleaded

guilty. He now maintains that the Supreme Court erred in denying his motion to suppress. We agree.

In the recent decision in *Matter of Antoine W.* (162 AD2d 121), this court held that the acts of defendant in that case, in twice permitting passengers at a bus station to board a bus ahead of him, in looking around and then, in entering a snack bar, did not reach the level which could sustain " 'a founded suspicion that criminal activity is present' *(People v De Bour,* 40 NY2d 210, 215 * * *)" such as to justify a police inquiry and search of defendant's bag. As in *Antoine W.,* the acts of this defendant, in walking around the train station waiting area, glancing at the board where departures were announced, talking to another man, placing his bag on the ground and then in taking a few steps away from it, were innocent and consistent with a situation familiar to anyone who has ever frequented a train station.

As in *Antoine W. (supra),* Piccirillo's intrusion surpassed the preliminary information stage, the first step in police interaction with an individual *(People v De Bour, supra).* The officer did not even recall whether defendant produced identification or a train ticket in response to his initial inquiries. Defendant did, in fact, have a ticket to Philadelphia and did, in fact, reside in Allentown. There was no predicate for the second stage of police intrusion, the common-law inquiry of defendant since the police lacked a founded suspicion that criminal activity was afoot *(People v La Pene,* 40 NY2d 210; *Matter of Antoine W., supra; People v Boulware,* 130 AD2d 370, *appeal dismissed* 70 NY2d 994).

In light of the foregoing, we do not reach the issue of whether defendant voluntarily consented to the search of his bag. Were we to reach the issue, we would find that the consent was involuntary and constituted "a yielding to overbearing official pressure" *(People v Gonzalez,* 39 NY2d 122, 124; *Matter of Antoine W., supra,* at 123).

The Supreme Court did not address the fruit of the poisonous tree issue with respect to the suppression of defendant's statements since it found the search to have been proper. It is unnecessary for us to reach this issue, however, since the suppression of the narcotics mandates the dismissal of the indictment. Nor do we reach defendant's contention that a new suppression hearing is necessary because of the prosecutor's purported failure to turn over *Rosario* material. Concur—Rosenberger, J. P., Kassal, Wallach and Rubin, JJ.

Smith, J., dissents in a memorandum as follows: I dissent

for the reasons which caused me to disagree with the majority opinion in *Matter of Antoine W.* (162 AD2d 121 [1st Dept 1990]). Moreover, the appeal should be held in abeyance and the case remanded for a determination as to whether *Rosario* material was turned over to the defense.

There was an articulable reason sufficient to justify the police officer's approach and inquiry of the defendant. *(People v De Bour,* 40 NY2d 210, 213 [1976].) There also was sufficient evidence of a voluntary consent to the search of the bag in which cocaine was found. *(People v Gonzalez,* 39 NY2d 122 [1976].)

On August 9, 1989 Thomas Piccirillo was a police officer with the Drug Enforcement Unit of the Amtrak Police Department. Around 7:30 P.M. he was on duty in casual clothes in Pennsylvania Station in Manhattan. The defendant Roberto Irizarry was observed by Officer Piccirillo over a period of one hour. The defendant was walking about the waiting area and kept looking behind him. At one point he waved to another man from across the waiting room. The other man approached, the two conversed briefly and the man left. Irizarry sometime thereafter placed the bag he was carrying on the ground and stepped six to eight feet away from it from some 10 minutes. Police Officer Piccirillo approached the defendant to inquire, believing that defendant's conduct in leaving the bag unattended was "very unusual" in Pennsylvania Station, a high-theft area.

A police officer's ability to approach and request information need not rest upon any indication of criminal activity by the person of whom inquiry is made. *(People v De Bour,* 40 NY2d, *supra,* at 213.) In fact, in *De Bour* the only thing the defendant did before being approached by the police was to cross the street. There, the Court of Appeals stated: "This case raises the fundamental issue of whether or not a police officer, in the absence of any concrete indication of criminality, may approach a private citizen on the street for the purpose of requesting information. We hold that he may. The basis for this inquiry need not rest on any indication of criminal activity on the part of the person of whom the inquiry is made but there must be some articulable reason sufficient to justify the police action which was undertaken." (40 NY2d, *supra,* at 213.) Here, the officer's questions to defendant, inquiring where he was going, where he lived and whether he had identification, constituted an exercise of the most minimal level of police intrusion. *(People v La Pene,* 40 NY2d 210, 223 [1976].)

While Irizarry appeared to be nervous when reaching for his wallet in response to the officer's request for identification, the circumstances herein do not support the conclusion that defendant's consent was the result of "a yielding to overbearing official pressure". *(People v Gonzalez,* 39 NY2d, *supra,* at 124.)* Officer Piccirillo was in plain clothes, he spoke to defendant in a "mild" tone of voice and throughout the encounter his gun was concealed in an ankle holster. Nor, at that time, did he have physical contact with defendant. Drug Enforcement Administration Agent Rich Detrio, who was also in plain clothes, stood somewhere behind defendant beyond arm's reach. There is no indication that defendant even was aware of Detrio's presence.

However, I believe that the appeal should be held in abeyance and the matter remanded for a hearing to determine whether the People met their affirmative obligation to provide the defense with a transcript of the Grand Jury testimony of Officer Piccirillo, and, if not, whether the transcript is a "duplicative equivalent" of other *Rosario* material disclosed to the defense. (CPL 240.45; *People v Rosario,* 9 NY2d 286 [1961], *cert denied* 368 US 866 [1961]; *People v Payne,* 52 NY2d 743, 745 [1980]; *People v Ranghelle,* 69 NY2d 56 [1986]; *People v Wahad,* 158 AD2d 312 [1st Dept 1990], *lv denied* 75 NY2d 970 [1990].)

In his omnibus motion papers, the defendant sought, *inter alia,* the prior statements of witnesses, *Brady* material and material required to be disclosed prior to hearing or trial. (CPL 240.44, 240.45.) The motion for discovery was granted, the court directing both sides to arrange for disclosure. Accordingly, at the commencement of the suppression hearing, the Assistant District Attorney turned over to defense counsel several items of *Rosario* material, identifying each item on the record. The record does not indicate that the Grand Jury testimony of Officer Piccirillo was provided to the defense at this time or at any other time during the proceedings. Following the hearing the court denied defendant's motion to suppress and the defendant entered a plea of guilty in satisfaction of the indictment. Prior to sentencing, defense counsel advised the court that in reviewing his file he realized that he had not received a copy of Officer Piccirillo's Grand Jury testimony and stated that he did not know whether the officer had in fact testified before the Grand Jury. The court denied defense counsel's request for an adjournment and precluded further inquiry, commenting:

"I also find it hard to believe that you didn't ask for them.

It's not like you and if you didn't ask for them you may conceivably have waived your right to them. * * *

"I'm sure you did ask for it. * * * Knowing you, you would have asked for it and I would find it hard to believe if there were Grand Jury minutes that they weren't turned over."

Since it is not possible on the record before us to determine whether the Grand Jury transcript was disclosed, I would remand for a hearing.