■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GREGORY SAUNDERS, Appellant.—Judgment of the Supreme Court, New York County (Edward J. McLaughlin, J.), rendered September 6, 1989, convicting defendant, upon his plea of guilty, of Criminal Possession of a Controlled Substance in the Third Degree and sentencing him to a term of one to three years, is affirmed.

Defendant moved to suppress a quantity of cocaine discovered by police officers during a consent search of a bag carried by him as he boarded a bus in the Port Authority Bus Terminal. It was denied by Criminal Term. After hearing,

that court found that the bus terminal is used by drug couriers in the transport of narcotics. The Port Authority Police Department utilized Detective Sergeant Canale and Detective Kane as part of a Narcotic Interdiction Team. Members of the team were positioned near platform 68 on February 1, 1989, where buses leave for Baltimore, Washington and Virginia. Detective Sergeant Canale watched ten or fifteen people on line for the 5:00 P.M. bus. When the passengers began boarding the bus at about 4:45 P.M., Canale observed them casually giving their tickets to the driver and getting on the bus. Defendant, who joined the line about five minutes before departure time, carried a zippered gym bag. He surveyed the interior of the boarding area as he stood in line. Defendant also looked around his surroundings nervously, then focused on the boarding area and the bus. At one point, he yielded his place on line to another passenger. Canale had been watching defendant for almost five minutes, occasionally making eye contact. As the defendant approached the driver, he looked at Canale, hesitated slightly, and entered the boarding area. Canale approached defendant with Detective Kane and Smith a few feet behind. He identified himself and asked if he could speak with defendant. When defendant agreed and stepped away from the line, Canale asked where defendant was going and in response to the answer "Baltimore", asked "why". Defendant said to visit relatives. Canale then asked if he could search the bag. When defendant said yes, the officer repeated the question and got the same answer. Defendant looked around nervously, spoke rapidly during the questions and his voice broke during one of his answers. A search of the bag revealed cocaine powder and thirty-eight vials of cocaine.

Criminal Term credited the testimony of the police officers finding it to be both "credible" and "candid". We agree with that assessment and with the above findings of fact, as apparently does the dissent.

Criminal Term concluded that the police action in approaching defendant for preliminary information was justifiable and we agree. While the dissent contends the police intrusion surpassed the preliminary information stage which is the first step in police interaction with an individual, we note that *People v De Bour* (40 NY2d 210, 223) found that the "minimal intrusion of approaching to request information is permissible when there is some objective credible reason for that inference *not necessarily indicative of criminality*" (emphasis added). Thus, when Sergeant Canale approached defendant he had the

right to request information. There was no showing and the hearing court made no finding, that this preliminary information-level stage was undertaken by the police "based upon mere whim, caprice or idle curiosity" *(People v De Bour, supra,* at 217). While the dissent finds there was no predicate for the common-law inquiry of defendant, "since the police lacked a founded suspicion that criminal activity was present", the police under the circumstances here never reached the stage of common-law inquiry which requires such founded and reasonable suspicion. What differentiates the two? The latter common-law right of inquiry justifies a stop involving actual or constructive restraint *(People v De Bour, supra,* at 216). When Sergeant Canale approached defendant, he had the right to request information, but not to engage in the more restrictive common-law right to inquire. Since Canale's action in approaching the defendant did not involve either the actual or constructive restraint of the defendant it did not constitute a common-law inquiry but a simple request for information.

"[T]he practical necessities of law enforcement and the obvious fact that any person in our society may approach any other person and attempt to strike up a conversation, make it clear that the police have the authority to approach civilians" *(People v De Bour, supra,* at 219).

As Criminal Term found: "Canale was dressed in civilian clothes, politely identified himself, and displayed his shield. All of this took place in a public and well lighted area where Saunders had nothing to fear. Saunders agreed to talk to Canale, who had asked him whether he would mind talking to him; Saunders, on his own, even stepped out of line to talk to Canale. At all times, Saunders was free simply to end the conversation and even to get on the bus. Canale's questions were non-invasive and legitimate. Saunders was asked where he was going and why. There was no touching, no quick gestures, no weapons, no crowding, no loud voices, no humiliation, no intimidation. The manner and intensity of the interference, accordingly, was that permitted by the information-level standard."

This situation and the police action clearly approximates that found in *De Bour (supra,* at 220), "The encounter here was devoid of harassment or intimidation. It was brief lasting only a few minutes and the questions were circumscribed in scope * * * Significantly, the encounter did not subject De Bour to a loss of dignity * * * In addition, the crime

sought to be prevented involved narcotics and the Legislature has declared that to be a serious crime".

While the dissent cites *Matter of Antoine W.* (162 AD2d 121, *appeal dismissed* 76 NY2d 887) and *People v Irizarry* (168 AD2d 377), we read those cases as asserting there was no predicate under the circumstances in each for common-law inquiry undertaken by the police. Insofar as they may hold that the police cannot ask investigative questions of a potential suspect without a founded suspicion that criminal activity is present, they clearly misinterpret the Court of Appeals holding in *De Bour (see, dissents in People v Irizarry,* 168 AD2d 377, 379, *supra; Matter of Antoine W.,* 162 AD2d 121, 123, *supra; see also, People v Hollman,* 168 AD2d 259, 261 [where the questioning was even more intrusive with the officer there sitting on the bus seat in front of defendant's seat and asking him questions—but still held not to constitute a seizure of defendant]).

Finally, we agree with the conclusion of Criminal Term that defendant consented to the search of his gym bag and that the consent was not based upon any yielding to overbearing police pressure *(see, People v Gonzalez,* 39 NY2d 122). Concur—Sullivan, J. P., Ross, Asch and Smith, JJ.

Rosenberger, J., dissents in a memorandum as follows: Since I believe that our previous holdings in *People v Irizarry* (168 AD2d 377) and *Matter of Antoine W.* (162 AD2d 121, *appeal dismissed* 76 NY2d 887) are controlling, I would reverse the judgment of conviction, suppress the narcotics seized from defendant's bag and dismiss the indictment.

Shortly before 5:00 P.M. on February 1, 1989, Detective Richard Canale, along with several other officers of the narcotics interdiction team of the Port Authority Police Department, stationed themselves near platform 68 where a Greyhound bus bound for Baltimore-Washington was scheduled to depart at 5:00 P.M. As Canale observed the area, he noticed defendant, who joined the line where ten to fifteen other passengers were waiting to board the bus. Canale watched as defendant, who was carrying a gym bag, looked around in what Canale described as a nervous manner. As the passengers began to board the bus, defendant continued to look around the terminal. When defendant glanced at Canale, who was in plainclothes, he appeared to Canale to hesitate slightly.

Based on defendant's behavior, Canale approached, displayed his police shield, identified himself as a police officer and asked defendant if he would mind speaking to him.

Defendant agreed and stepped to the side of the line of passengers with Canale. In response to Canale's questioning, defendant stated that he was travelling to Baltimore to visit relatives. Since defendant's answers, according to Canale, were "rapid", and, because defendant's "voice broke several times" after Canale told him he was assigned to the narcotics interdiction squad, Canale asked defendant if he could search his bag. Defendant replied, "[y]es. Go ahead." Canale then repeated his request and defendant again agreed to let Canale search the bag. Canale handed the bag to Detective Smith, and while Detective Kane observed, Smith searched the bag. After removing several items of clothing, Smith recovered a brown paper bag containing two plastic bags from inside a sneaker. One plastic bag contained a hard, white powder. Inside the other were 38 vials.

The Supreme Court concluded that the approach and questioning of defendant were justified and that defendant's consent to the search of his bag was voluntary. Defendant's motion to suppress the narcotics recovered from his gym bag was therefore denied.

In *Matter of Antoine W. (supra)*, this court held that defendant's acts of permitting other passengers to board ahead of him, looking around and then entering a snack bar, did not give rise to a founded suspicion that criminal activity was afoot *(see, People v De Bour*, 40 NY2d 210) such as to justify a police inquiry and search of defendant's bag. Similarly, in the subsequent case of *People v Irizarry (supra)*, we concluded that defendant's actions, in walking around a train station waiting area, glancing at the departure board, speaking to another individual, and in placing his bag on the ground and taking a few steps away, were innocent and consistent with the actions of any passenger at a train station.

The actions of defendant herein were even more innocuous than those of defendants in *Matter of Antoine W. (supra)* and *People v Irizarry (supra)*. Defendant, while waiting in line to board a bus to Baltimore, looked around the terminal area where 50 to 100 other people were congregated. Such behavior is consistent with that of a person who is waiting for a traveling companion to arrive or of someone who is concerned with his or her own safety. Canale's belief that defendant hesitated when he saw him because he thought he was a police officer is merely speculative, particularly in light of the fact that Canale was not in uniform.

Detective Canale's intrusion surpassed the preliminary information stage, the first step in police interaction with an

individual *(People v De Bour, supra; People v Irizarry, supra; Matter of Antoine W., supra)*. There was no predicate for the common law inquiry of defendant, the second stage of police intrusion, since the police lacked a founded suspicion that criminal activity was present *(People v La Pene,* 40 NY2d 210; *People v Irizarry, supra; Matter of Antoine W., supra)*. While a conclusion somewhat inconsistent with *People v Irizarry* and *Matter of Antoine W.* was reached in *People v Hollman* (168 AD2d 259, *lv denied* 76 NY2d 1021), defendant's actions in *Hollman,* in moving furtively around the Port Authority Bus Terminal with a companion, scanning the area, sitting in the rear of the bus and in taking certain measures to safeguard his sports bag, created more of a suspicion than those of this defendant. In addition, this defendant's responses to the police inquiry, which was clearly conducted to create suspicion, failed to achieve that objective *(cf., People v Hollman, supra)*. Instead, his answers were consistent with those of any traveler.

Since I do not believe that the inquiry of defendant was justified, there is no need to reach the issue of the voluntariness of defendant's consent to search his bag. I would note, however, that as in *People v Irizarry (supra)* and *Matter of Antoine W. (supra)*, defendant's consent was involuntary and constituted "a yielding to overbearing official pressure" *(People v Gonzalez,* 39 NY2d 122, 124).