In the Matter of MARK ANTHONY G., a Person Alleged to be a Juvenile Delinquent.

First Department, July 2, 1991

**APPEARANCES OF COUNSEL**

*Trudi Mara Schleifer* of counsel *(Ellen B. Fishman* with her

on the brief; *Victor A. Kovner, Corporation Counsel,* attorney), for appellant.

*David Segal* for respondent.

## OPINION OF THE COURT

ROSENBERGER, J.

A juvenile delinquency petition was presented in the Family Court, charging respondent with unlawful possession of a weapon by a person under 16 years of age and unlawful possession of a weapon in the second degree. After respondent moved to suppress physical evidence consisting of a weapon and ammunition, a hearing was conducted, at which time Port Authority Police Officer John Ryan testified that at 12:30 A.M. on May 21, 1989, he observed respondent, standing by himself, glancing around the lower level escalator area of the Port Authority Bus Terminal. Because of his youthful appearance, the late hour and because respondent appeared to be alone in a vacant area of the terminal, Ryan approached to determine whether respondent was a runaway.

Ryan stated that respondent's answers to his questions were vague. When asked what he was doing at the Bus Terminal, respondent replied that he was taking a bus. When asked where he was going, at first respondent failed to reply. He then stated that he was traveling to Boston. He also told Ryan that he was 15 years old and, although he initially told him that he was traveling with someone else, he later responded that he was, in fact, alone. He was also unable to produce any identification.

Based on his answers, Ryan informed respondent that he was going to bring him to the Youth Services office to contact his parents. Before bringing him to the office, however, Ryan patted him down, and, feeling no weapon, asked if he could look into a bag which was draped over respondent's arm. Respondent agreed and handed Ryan the bag.

Ryan squeezed the outside of the bag and felt a square, hard object. Believing the object might be a knife, he unzipped the bag and discovered, at the bottom underneath some clothing, a clip from an Intertech nine millimeter pistol, containing 16 nine millimeter copper-jacketed bullets. When Ryan asked respondent where the gun was, respondent pointed to a man coming off the escalator and said "[h]e has it." Ryan thereafter recovered an Intertech nine millimeter machine gun from this other individual. Respondent was placed under arrest and

was escorted to the Youth Services office where he was advised of his *Miranda* rights.

The Family Court granted respondent's motion to suppress the clip containing the 16 cartridges and the machine gun recovered from the other individual, concluding that Officer Ryan lacked probable cause to believe respondent was a runaway. The court also noted that, even if the detention had been supported by probable cause, the subsequent search of respondent's bag exceeded a permissible safety frisk. Nor did the court find the search justified by respondent's consent.

We disagree with the conclusion and reasoning of the Family Court. Family Court Act § 718, also known as the "runaway statute", authorizes a police officer who reasonably believes that a youth under the age of 16 has run away from home without just cause, to take the child to a youth facility for the purpose of contacting the child's parents. The statute has been described as "a legitimate and indeed unassailable exercise of the *parens patriae* authority, since it serves to rescue children from the clear possibility of imminent and extreme physical, moral and psychological harm." *(Matter of Terrence G.,* 109 AD2d 440, 444.)

Subdivision (a) of the statute contains certain factors upon which an officer may rely in reaching a determination that a juvenile is a runaway. The officer may conclude that a child who refuses to give his name or the name and address of a parent or legal guardian is a runaway. The officer may also reach this conclusion if he doubts that the information provided by the juvenile is correct.

Counsel for respondent contends that Officer Ryan's failure to ascertain respondent's name or the name and address of his parents after approaching him vitiates a finding of probable cause. Although Ryan did not initially request this information, nor did he ask to see respondent's bus ticket, the factors listed in section 718 (a) are not all-inclusive, but merely set forth some criteria available to the officer in evaluating whether the child is a runaway.

Officer Ryan, with his 10 years of experience as a Port Authority Police Officer, noticed the youthful looking respondent standing by himself on the lower level of the terminal at 12:30 A.M. on a school night. He was not standing near the departure gates or ticket area and had no luggage except for the small bag draped over his arm. Although he first told Ryan that he was traveling with someone, he then told him

that he was alone. He told Ryan that he was 15 years old but could not produce any identification. He also did not respond initially when Ryan asked for his destination. He then said he was taking a bus to Boston.

Based on these factors, Ryan's opinion that respondent was a runaway was reasonable *(Matter of Terrence G., supra)*. "[I]t was not incumbent on the detaining officers to conclusively eliminate any other possible reason for the boy's presence in [the] Port Authority at that time" *(supra,* at 444). Respondent's youthful appearance, the hour of the day, his presence alone at a location described as the "national center for runaway children", his inability to produce identification, and the vague and inconsistent answers he provided, fully satisfied the statutory criteria for his detention *(supra,* at 443, 444). The only way to ascertain whether respondent was in fact a runaway was to detain him and bring him to the Youth Services office, where personal information could be taken and verified.

Our holding in Matter of *Antoine W.* (162 AD2d 121, *appeal dismissed* 76 NY2d 887) does not require a contrary result. The 15-year-old youth in *Antoine W.* was approached because the officers believed he was a narcotics courier, not because they suspected him of being a runaway. Unlike *Antoine W.,* who was stopped under the proffered authority of the Criminal Procedure Law (§ 140.50 [1]), respondent was detained pursuant to Family Court Act § 718, a noncriminal statute. He was not stopped and detained because the officer suspected him of engaging in criminal wrongdoing. It was, therefore, unnecessary to establish that defendant's actions created "a founded suspicion that criminal activity [was] present", the predicate found lacking in *Antoine W. (see, People v De Bour,* 40 NY2d 210, 215).

While respondent concedes that a juvenile lawfully detained pursuant to section 718 may be subjected to a pat-down search of his person *(Matter of Terrence G., supra),* he maintains that even if respondent's detention was lawful, the officer exceeded his authority in searching his bag. In upholding the legality of a pat-down search of a juvenile detained under the runaway statute, this court, in *Terrence G.,* noted that respondent therein, like respondent in the instant case, was detained by the police in an area notorious for its high incidence of criminal activity by armed juvenile runaways. The pat-down search was found necessary to ensure not only the safety of the officers, but of respondent himself, and of other children

similarly detained, with whom respondent would have contact once he was brought into the detention area of the Port Authority.

The dangers sought to be averted by frisking respondent equally extended to the bag he was carrying, which easily could have concealed a weapon. The facts and circumstances of each case determine the reasonableness of each search and seizure *(People v Smith,* 59 NY2d 454; *People v De Bour, supra).* Instead of immediately seizing and unzipping the bag, Ryan felt the outside, essentially "frisking" it to determine whether it contained a weapon. Given the unquestioned authority of the officers to pat down respondent's person, the frisk of the bag, the "least intrusive method by which an arresting officer may discover and confiscate a dangerous weapon" *(Matter of Terrence G., supra,* at 446), was a proper precautionary measure taken to assure his own safety as well as that of others in the terminal *(see, People v Brooks,* 65 NY2d 1021; *People v White,* 156 AD2d 741, *lv denied* 75 NY2d 971; *People v Covert,* 134 AD2d 444, *lv denied* 70 NY2d 1005; *People v Tratch,* 104 AD2d 503). After feeling the object which he reasonably thought to be a weapon, Officer Ryan properly conducted a more extensive search of the bag *(People v White, supra).* While respondent was detained under a noncriminal statute, a statute enacted for his protection, rather than prosecution, his detention amounted to a full custodial arrest *(Matter of Terrence G., supra).* The search of the bag was, therefore, also permissible as incident to his lawful arrest *(People v Weintraub,* 35 NY2d 351; *People v Covert, supra).*

In light of the foregoing, we need not reach the issue of the voluntariness of respondent's consent to search his bag.

Accordingly, the order of the Family Court, New York County (Mary E. Bednar, J.), entered on or about November 22, 1989, which granted respondent's motion to suppress physical evidence and dismissed the petition, should be reversed, on the law and the facts, without costs, the motion to suppress should be denied, the petition should be reinstated and the matter remitted to the Family Court for further proceedings.

SULLIVAN, J. P., CARRO, KUPFERMAN and RUBIN, JJ., concur.

Order, Family Court, New York County, entered on or about November 22, 1991, unanimously reversed, on the law and the facts, without costs, the motion to suppress denied, the petition reinstated and the matter remitted to the Family Court for further proceedings.