■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v LEON WHITFIELD, Respondent.—Order, Supreme Court, New York County (Robert Haft, J.), entered May 14, 1990, granting defendant's motion to suppress tangible evidence supporting charges against him of criminal possession of a controlled substance in the third and fourth degrees (Penal Law § 220.16 [1]; § 220.09 [1]) and criminally using drug paraphernalia in the second degree (Penal Law § 220.50 [2]), is affirmed.

At approximately 2:00 A.M. on April 23, 1989, Port Authority Officer Robert Yuen and his partner, Richard Holland, were on uniformed patrol in the Port Authority Bus Terminal in Manhattan. Officer Yuen, the sole witness to testify at the suppression hearing, stated that his attention was drawn to defendant and Rupert King as they walked and conversed in

the terminal because they looked "relatively young". At the time that Yuen first noticed the two men, King was carrying a black bag.

When defendant and King took an escalator to the lower level of the terminal, from which buses depart, the officers also proceeded down the escalator. At the bottom of the escalator, defendant and King separated and walked to different bus gates. Having directed his partner to "keep an eye on" defendant, Officer Yuen approached King. When he came within five feet of him, King dropped the bag and, in response to Yuen's inquiry of whether it belonged to him, stated that it did not. The officer then asked King whether the bag belonged to his friend, referring to defendant, and King replied that he did not know. As the passengers in King's bus line began to board, Yuen "escorted King with the bag in my hand" to defendant's gate. Since defendant had already boarded his bus, Yuen's partner entered and "brought [defendant] down from the bus and [Yuen] confronted [defendant] with the bag." Defendant denied that it belonged to him.

Officer Yuen next asked King for identification, and he stated he did not have any. At this point, King made a "slight motion for the bag", which Yuen testified made him fear for his and his partner's safety, and led to a patdown of King. The officer felt a hard object in King's pocket, which King explained was a bullet he found on the street. Both men were then placed against the wall and frisked. No weapons were recovered. Yuen then opened the bag and discovered narcotics.

After an off-the-record Bench conference and the grant of the prosecutor's motion to "reopen briefly [his] direct case", Yuen testified that his partner, Officer Holland, had informed him, upon King's denial of ownership, that he had earlier observed defendant holding the bag.

In appealing from the hearing court's grant of defendant's motion to suppress the tangible evidence as the product of an unlawful search and seizure, the prosecution makes no claim of legality with respect to the seizure of defendant. It contends, however, that defendant lacked standing to challenge the search of the black bag in which he denied any proprietary interest and which, it is further argued, was intentionally abandoned by King.* We affirm the hearing court's ruling to suppress.

---

* Rupert King pled guilty to criminal possession of a controlled substance in the third degree, and was sentenced to five years' probation as a youthful offender.

On a motion to suppress evidence claimed to have been unlawfully obtained, the prosecution bears the burden of going forward to show the legality of the police conduct in the first instance. *(People v Berrios,* 28 NY2d 361, 367; *People v Malinsky,* 15 NY2d 86, 91, n 2.)* In the record before us, it has failed to do so. The law is well-settled that before a police officer may lawfully stop a person in a public place, he must have a reasonable suspicion that the person is committing, has committed, or is about to commit a crime. *(People v Cantor,* 36 NY2d 106, 112-113; CPL 140.50; *Terry v Ohio,* 392 US 1.)* Here, the police entered a bus in which defendant was a ticketed passenger, removed him therefrom, and—in the word of the testifying officer—"confronted" him with a bag which, they told him, his friend had denied owning.

At no time prior to, during, or following this forcible seizure and detention of defendant, had the officers observed any conduct indicative of criminality on his part. Rather, defendant's behavior, including that of carrying a bag—whether belonging to him or to his companion—was wholly appropriate and consistent with innocent activity at a bus terminal, as was his boarding of a bus for which he was found, following a search incident to arrest, to have a valid ticket. As such, the police could at best claim a common-law right of inquiry, and this stemming solely from the actions of King after he and defendant had parted to board their respective buses. *(See, People v Irizarry,* 168 AD2d 377; *Matter of Antoine W.,* 162 AD2d 121.)* We further note that, despite King's denial of ownership or possession of the bag, the officers had neither opened the bag to discover the contraband, nor otherwise established that criminal activity was at hand, prior to their forcible stop of defendant. *(See, People v Cantor, supra.)* In short, there was no predicate whatsoever for the level of intrusion in which the police engaged. *(People v De Bour,* 40 NY2d 210, 215; *People v Irizarry, supra,* at 379; *Matter of Antoine W., supra,* at 122.)*

Nor do we reject defendant's challenge for lack of standing. First, we note that defendant's motion to suppress specifically acknowledged that the bag had been in his possession and, indeed, the prosecution re-opened its direct case for the sole purpose of introducing this salient fact into evidence. Moreover, under the circumstances presented, defendant's denial of ownership was a "spontaneous reaction" to the unlawful seizure of his person, and thus any abandonment on his part must be interpreted as involuntary. *(People v Howard,* 50 NY2d 583, 593.)* Where a defendant's acts are "spontaneous

and precipitated by [police] illegality", evidence seized as a result thereof must be suppressed in the absence of attenuation. *(People v Wilkerson,* 64 NY2d 749, 750; *see also, People v Felton,* 78 NY2d 1063.)

Here, defendant's disavowal of ownership was a direct and immediate reaction to his unlawful removal from the bus and "confront[ation]" with the bag, as well as with the fact of King's police custody and denial of ownership. As such, it may not be deemed to constitute a voluntary abandonment or relinquishment of right to the property seized, thereby forming the basis upon which to deny defendant standing. For all of these reasons, the contraband recovered was properly suppressed as evidence derivative of the unlawful seizure of defendant. *(Wong Sun v United States,* 371 US 471; *People v Howard, supra.)* Concur—Carro, Milonas, Asch and Kassal, JJ.

Sullivan, J. P., dissents in a memorandum as follows: Since I believe that defendant lacked standing to challenge the seizure of the contraband, I would reverse and deny the motion to suppress. A defendant seeking to challenge a search and seizure must demonstrate that the search violated his "personal legitimate expectation of privacy". *(People v Wesley,* 73 NY2d 351, 357.) Defendant has failed to make such a showing in this case.

To establish defendant's standing, the majority relies on the allegation in defendant's motion to suppress that the police "searched a bag in [defendant's] possession and discovered contraband in said bag". First of all, it is not clear whether this statement means that defendant had actual physical possession or merely constructive possession of the bag. In any event, this is not a statement of fact; it is merely the allegation of defendant's counsel, unsupported by any evidence adduced at the hearing, and is insufficient to meet defendant's burden of proof on the standing issue. *(See, People v Wesley, supra,* at 358-359; *see also,* CPL 710.60 [1].)

While the hearing testimony which establishes defendant's standing may come from the People's witnesses and may be in the form of hearsay *(People v Gonzalez,* 68 NY2d 950, 951), the People's proof merely showed that the arresting officer's partner had told him that he had seen defendant give the bag to King earlier. Since defendant had relinquished possession of the bag to King and had separated from King, he can scarcely claim that the earlier observation of him holding the bag is sufficient to demonstrate that he had a legitimate expectation of privacy therein.

The majority concludes that defendant's statement to the police denying ownership of the bag may not be considered a voluntary abandonment and may not be a basis upon which to deny defendant standing. Neither, however, does this statement demonstrate defendant's ownership and, thus, it cannot serve as a predicate to establish standing.