■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PELICIA BORDEAUX, Appellant.—Judgment reversed on the law, motion granted and indictment dismissed. Memorandum: Even if the police had an " 'objective credible reason' " to approach the defendant, "the pointed questioning regarding the ownership of the bag * * * was improper because it was not based on a founded suspicion of criminal activity" (Matter of Antoine W., 79 NY2d 888, 889-890; see also, People v Saunders, 79 NY2d 181; People v De Bour, 40 NY2d 210, 215, 223).

The police officers' interest in defendant and her companion was initially sparked by information from an unidentified informant regarding the conduct of two Black women at Syracuse Airport. Initially, the women were seen standing in

separate parts of the baggage claim area. One woman then went outside to engage a taxi while the other remained in the terminal. After the second woman retrieved a black suitcase, she met her companion outside and the two took a cab to a motel. The motel desk clerk and manager reported to the police that the women, later identified as defendant and Diane Sweeney, were dressed in "flashy" miniskirts and had checked in at an unusually early hour. After defendant and Sweeney checked out of the motel, the police followed them to the bus station.

The police officers approached defendant and Sweeney at the bus station and requested information concerning their identity and destination. Both women promptly produced valid New York State driver's licenses which corresponded to the names in the motel registration. Based on information provided by the motel clerk, the police had already run a records check which revealed that defendant had no criminal record and no outstanding warrants. Defendant and Sweeney also gave the officers an account of their travel itinerary, and defendant produced an airline ticket bearing the name "Smith". After defendant explained that someone else had purchased her ticket, the officer sought no further explanation regarding the name on the ticket.

At this point there was no predicate for a common-law inquiry of defendant concerning the ownership of the black bag *(see, People v Saunders, supra; People v Irizarry,* 168 AD2d 377, *affd* 79 NY2d 890; *Matter of Antoine W., supra).* Unlike the suspects in *People v Hollman* (79 NY2d 181), defendant and Sweeney did nothing unusual with the suitcase. Rather, like the typical traveler at any bus station, the women checked the suitcase with a baggage handler. Their actions at the bus station, like their conduct at the airport, were entirely innocent and consistent with situations confronted by anyone familiar with bus stations and airports *(see, People v Irizarry, supra,* at 379; *Matter of Antoine W.,* 162 AD2d 121, 122, *affd* 79 NY2d 888, *supra).* Nothing in defendant's conduct created a "founded suspicion that criminal activity is afoot" *(People v De Bour, supra,* at 223; *People v Hollman, supra),* which would activate the officers' common-law right to inquire about the ownership of the bag. All evidence seized as the result of this improper police inquiry must be suppressed *(see, People v Saunders, supra).*

Further, the improper police intrusion did not end with the unjustified common-law inquiry of defendant. After defendant and Sweeney denied knowledge or ownership of the black bag,

the police seized the bag from the luggage compartment and told the bus driver to leave without the two women, which amounted to a forcible seizure and detention of defendant and Sweeney. The forcible seizure and detention of defendant was authorized only if the police had a reasonable suspicion that she was involved in a crime *(People v Hollman, supra; People v De Bour, supra,* at 223), but the police officer conceded that there was no reason to detain defendant and Sweeney prior to the removal of the suitcase from the bus. At that point, the arresting officers testified only that they suspected "that there was something wrong" and that the suspects were lying about the suitcase. By their own testimony, neither officer had an articulable reason to seize defendant and Sweeney forcibly at the time they told the bus driver to leave without the two women *(see, People v De Bour, supra,* at 217). The fact that cocaine was ultimately found cannot validate the seizure of defendant and the search of the suitcase. "The police may not justify a stop by a subsequently acquired suspicion resulting from the stop" *(People v De Bour, supra,* at 215-216; *see also, People v Scott D.,* 34 NY2d 483, 490).

Because the evidence was obtained as the result of improper police conduct, we need not consider whether defendant abandoned the black bag. All of defendant's statements that would support a finding of abandonment were in response to questions the police were not entitled to ask. If we were to reach the question of abandonment, therefore, we would find that defendant's conduct was a "provoked and spontaneous response" to illegal police actions *(People v Torres,* 115 AD2d 93, 99; *see, People v Howard,* 50 NY2d 583; *People v Boodle,* 47 NY2d 398).

We have reviewed the other issues raised by defendant on appeal and find them to be without merit.

All concur, except Denman, P. J., and Balio, J., who dissent and vote to affirm in the following Memorandum.

Denman, P. J., and Balio, J. (dissenting). We respectfully dissent. The arresting officers had at least a "founded suspicion" of criminal activity at the time they undertook their "common-law inquiry" regarding the ownership of defendant's luggage *(People v Hollman,* 79 NY2d 181, 188). Moreover, the officers' subsequent search of the bag and discovery of cocaine therein, after defendant and her companion had repeatedly denied ownership of the bag, was proper under the abandonment doctrine *(People v Hollman, supra; United States v Clark,* 891 F2d 501; *United States v Moskowitz,* 883 F2d 1142).

Therefore, the encounter did not violate the United States or New York Constitution or State common law.

At about 11:20 A.M. on August 10, 1989, Investigators Lynch and Toomey, two experienced narcotics officers assigned to the Central New York Drug Task Force, received information that two suspicious Black females had arrived at the Syracuse airport; had tried to appear to be traveling separately, but obviously were together; had retrieved a large black bag from the luggage return; and had taken a cab to a nearby Days Inn. The officers proceeded to the hotel, and learned from the desk clerk that the women had checked in for the "evening" and had walked across the street to a restaurant. The desk clerk stated that the two women had made her "very suspicious" because they were dressed in a "very flashy manner", because they had checked in so early in the day, and because one of the women, later identified as codefendant Diane Sweeney, had been unable to produce the identification needed to register. When the women returned to the hotel a few minutes later, the officers took up surveillance. Sweeney checked out of the hotel, obtaining a partial refund on the price of the room after a discussion with the desk clerk. The other woman, later identified as defendant Pelicia Bordeaux, wheeled the large black bag from the room to a waiting cab. Following in their own car, the officers observed the cab take the women to the Syracuse bus station.

The officers approached the women outside the bus station as they were about to board a Rochester-bound bus. In response to questioning, each woman produced a driver's license bearing her true name, and disclosed their travel itinerary. They stated that they had flown from Rochester to Los Angeles the day before and were then returning to Rochester following a flight from Los Angeles to Syracuse via Baltimore. Bordeaux showed her airline ticket to Toomey, who noted that Bordeaux had traveled under the name "Smith". Noting that the women's large black bag had been placed in the luggage compartment of the bus, the officers asked them two or three times whether they had any other luggage besides their purses. Both responded "no" on each occasion. The officers had the bag taken off the bus, but the women continued to deny that it was theirs, although Sweeney became visibly nervous. Even when the officers told the women that they had seen them with the bag, the women persisted in denying ownership. At that point, the officers seized the bag and ordered the women to accompany them into an office at the terminal. Sweeney tried to flee but was restrained. Once inside the

office, the officers searched the bag, discovered three packets of cocaine, and arrested the women.

The officers were justified in their initial approach of the women at the bus station. Such approach was based on an "objective credible reason * * * not necessarily indicative of criminality", and certainly was not "based upon mere whim, caprice or idle curiosity" *(People v De Bour,* 40 NY2d 210, 223, 217; *see, People v Hollman, supra; People v Edmund,* 169 AD2d 195, *lv denied* 78 NY2d 1075). Moreover, the officers' initial questioning of the women was reasonable and permissible under that standard because the questions were limited to their identity, point of origin, and destination *(People v Hollman, supra).* In response to that "request for information" *(People v Hollman, supra,* at 190), the police learned that defendant had been traveling under an assumed name. Only then did the officers proceed to the next level of inquiry, exercising their "common-law right to inquire" *(supra,* at 193), by asking the women about their ownership of the bag. That questioning was proper because the officers had a " 'founded suspicion that criminal activity [was] afoot' " *(People v Hollman, supra,* at 184, quoting *People v De Bour, supra,* at 223) based on knowledge of the women's suspicious behavior at the airport and at the hotel, their apparent effort to conceal the fact that they were traveling together, and their conduct in checking into and out of the hotel within approximately 45 minutes. Those facts, combined with the information that defendant was traveling under an alias, warranted the officers in asking about the bag *(see, People v Hollman, supra; see also, Florida v Royer,* 460 US 491, 502). Recognizing that the standards for evaluating police encounters established in *De Bour (supra)* and reaffirmed in *Hollman (supra)* reflect State policy and common law, rather than constitutional protections, we believe that the police encounter here did not violate the privacy interests sought to be protected by those standards.

In combination with the foregoing facts, the women's persistent denials of ownership of the bag gave rise to reasonable suspicion that they were committing a possessory crime. That authorized the officers to detain the women and take control of the bag for further investigation *(see, United States v Sharpe,* 470 US 675). In addition, the women's persistent denial of ownership of the bag constituted abandonment, thereby giving rise to independent authority to search the bag *(People v Hollman, supra; United States v Clark, supra; United States v Moskowitz, supra).*

We agree with the majority that defendant's remaining contentions are without merit. (Appeal from Judgment of Onondaga County Court, Burke, J.—Criminal Possession Controlled Substance, 1st Degree.) Present—Denman, P. J., Green, Pine, Balio and Fallon, JJ.