**Pelicia BORDEAUX, Plaintiff,**

v.

**Michael Wayne LYNCH; Allen J. Toomey; The City of Syracuse, New York; The Sheriff of Onondaga County, New York; and The County of Onondaga New York,[1] Defendants.**

No. 95–CV–1761 (RSP/GJD).

United States District Court, N.D. New York.

March 13, 1997.

1. On December 8, 1995, plaintiff dismissed de- fendant State of New York. *See* Dkt. No. 13.

Holtzberg & Conway, East Rochester, New York, for Plaintiff (Richard H. Holtzberg, of counsel).

City of Syracuse Corporation Counsel, Syracuse, New York, for Defendants Michael Wayne Lynch and the City of Syracuse (Lisa DiPoala Haber, of counsel).

Onondaga County Attorney, Syracuse, New York, for Defendants Allen J. Toomey, the Sheriff of Onondaga County, and the County of Onondaga (Joanna Gozzi, of counsel).

Thomas J. Maroney, United States Attorney, Syracuse, New York, for Defendants Michael Wayne Lynch and Allen J. Toomey (Paula Ryan Conan, Assistant United States Attorney, of counsel).

## MEMORANDUM–DECISION AND ORDER

POOLER, District Judge.

### INTRODUCTION

In this civil rights lawsuit, plaintiff Pelicia Bordeaux claims that defendants violated her rights under the Fourth Amendment of the United States Constitution. The alleged wrongful conduct consists of searching Bordeaux at the Syracuse bus station and then arresting her. Bordeaux brought her claims of illegal search and seizure, false arrest, false imprisonment, malicious prosecution, and abuse of process pursuant to 42 U.S.C. § 1983. In lieu of answering the complaint, defendants Onondaga County, the Onondaga County Sheriff, and Allen J. Toomey, a former member of the Onondaga County Sher-

iff's Department and the Central New York Drug Enforcement Task Force, made a motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). *See* Dkt. Nos. 7, 8. Defendants City of Syracuse and Michael Wayne Lynch, a member of the Syracuse Police Department and former member of the Central New York Drug Enforcement Task Force, answered the complaint and moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) and for summary judgment pursuant to Fed.R.Civ.P. 56(a). *See* Dkt. Nos. 11, 14, 15. The United States Attorney for the Northern District of New York, served a notice of appearance for defendants Lynch and Toomey, submitted a letter brief in support of the previously filed motions, and argued that Lynch and Toomey were entitled to qualified immunity. Dkt. Nos. 28, 29. I heard argument on the defendants' motions on February 5, 1996.

Considering defendants' motions as motions for summary judgment, I grant summary judgment to defendants City of Syracuse, Onondaga County and the Onondaga County Sheriff. I also grant summary judgment to defendants Lynch and Toomey in their individual capacities, because their actions, even if violative of the Fourth Amendment, are protected by qualified immunity. I decline to consider any potential claims plaintiff may have against the federal government pursuant to the Federal Tort Claims Act.

## BACKGROUND

Bordeaux and her companion Diane Sweeney arrived at the Syracuse Airport on August 10, 1989, and caught the attention of a Central New York Drug Task Force ("Task Force") informant as they were standing in the baggage claim area. Holtzberg Aff., Dkt. No. 19, Ex. A (*People v. Bordeaux*, 182 A.D.2d 1095, 1095–96, 583 N.Y.S.2d 865 (4th Dep't), *appeal dismissed*, 80 N.Y.2d 915, 588 N.Y.S.2d 821, 602 N.E.2d 229 (1992)). Bordeaux and Sweeney departed the airport together by taxi and traveled to a local motel. *Id.* at 1096, 583 N.Y.S.2d 865. Following up on the informant's information, Task Force officers Lynch and Toomey traveled to the motel, placed Bordeaux and Sweeney under surveillance, and observed the women check out of the motel and depart by taxi for the Syracuse bus station. *Id.* At the bus station, Lynch and Toomey approached the women and requested information concerning their identities and destination. *Id.* Bordeaux and Sweeney each produced valid New York State drivers licenses with names that corresponded to those they used to register at the motel. *Id.* Bordeaux and Sweeney also provided details about their travel. *Id.*

The officers observed that Bordeaux's airline ticket bore the name "Smith." *Id.* Bordeaux explained that someone else had purchased the ticket. *Id.* The officers also questioned Bordeaux and Sweeney about a black piece of luggage (the "black bag"). *Id.* The women denied knowledge or ownership of the black bag. *Id.* Believing that the women were lying about their ownership of the black bag, and suspecting "that there was something wrong," the officers retrieved the black bag from the luggage compartment of the bus and instructed the driver to leave without Bordeaux and Sweeney. *Id.* at 1096–97, 583 N.Y.S.2d 865. The officers escorted Bordeaux and Sweeney into a private room of the bus station and searched the black bag which contained cocaine. *Id.* at 1097, 583 N.Y.S.2d 865.

The officers arrested Bordeaux and Sweeney. *Id.* Bordeaux was indicted, convicted, and sentenced to concurrent terms of eighteen years to life and five to fifteen years for criminal possession of a controlled substance in the first and third degrees.[2] Holtzberg Aff., Dkt. No. 19, ¶¶ 6, 7; Haber Aff., Dkt. No. 14, Ex. A (Pl.'s Notice of Claim) ¶ 5. Bordeaux served two years and nine months of her term of incarceration before the New York State Appellate Division, Fourth Department, overturned her indictment in a three-to-two decision, holding that the officers lacked a "predicate for a common-law inquiry" into ownership of the black bag. *Bordeaux*, 182 A.D.2d at 1096, 583 N.Y.S.2d 865.

## DISCUSSION

### I. Legal Standard

In lieu of answering Bordeaux's complaint, defendants Onondaga County, the Onondaga

---

2. The record does not indicate the disposition of Sweeney's arrest.

County Sheriff, and Toomey moved to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). Dkt. No. 7. Defendants City of Syracuse and Lynch answered Bordeaux's complaint and then moved to dismiss pursuant to Fed.R.Civ.P. 12(c) for a judgment on the pleadings and for summary judgment pursuant to Fed.R.Civ.P. 56(a).[3] Dkt. No. 14. The federal government subsequently appeared on behalf of defendants Lynch and Toomey and submitted a letter brief in support of the previously submitted motions to dismiss and argued further that I should find Lynch and Toomey qualifiedly immune. Dkt. Nos. 28, 29.

■ In addition, both parties submitted additional information including affidavits, the appellate decision, and testimony from the grand jury proceedings.[4] When considering matters outside the pleadings under both Fed.R.Civ.P. 12(c) and 12(b)(6), "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *See* Fed.R.Civ.P. 12(c) and 12(b)(6). Therefore, in either considering Lynch's and the City's 12(c) motion or in determining whether to convert Toomey's and the County's Rule 12(b)(6) motion to one considered under Rule 56, I must assure myself that Bordeaux "should reasonably have recognized the possibility that the motion might be converted into one for summary judgment" and must avoid a situation where the non-movant "was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." *Krijn v. Pogue Simone Real Estate Co.*, 896 F.2d 687, 689 (2d Cir.1990) (discussing a district court's conversion of a Rule 12(b)(6)

motion to a Rule 56 motion for summary judgment) (internal quotations omitted).

■ Bordeaux had ample notice that this motion would be considered pursuant to Rule 56. First, Lynch and the City of Syracuse moved for summary judgment. Dkt. No. 14. Second, a letter brief submitted by the assistant United States attorney discusses a motion for summary judgment in favor of both Lynch and Toomey. Dkt. No. 29. Third, plaintiff also submitted affirmations in response to defendants' motions. *See* Dkt. Nos. 18, 19. Moreover, following argument on February 5, 1996, defendants submitted five additional affidavits. *See* Dkt. Nos. 32, 33, 35, 36, 37. Bordeaux should reasonably have recognized the possibility that the County's and Toomey's motion might be converted into one for summary judgment. *Krijn*, 896 F.2d at 689. Because I rely on these additional submissions, I treat defendants' motions as motions for summary judgment pursuant to Fed.R.Civ.P. 56. *Grand Union Co. v. Cord Meyer Dev. Corp.*, 735 F.2d 714, 717 (2d Cir.1984); *Triguero v. Consol. Rail Corp.*, 932 F.2d 95, 97 (2d Cir.1991).

Summary judgment shall enter if, when viewing the evidence in the light most favorable to the nonmovant, the court determines that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment must demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If the movant satisfies this initial burden, then the "burden shifts to the nonmovant to proffer evidence demonstrating that a trial is

**3.** I note that Fed.R.Civ.P. 56(a) allows the "Claimant" to move for summary judgment, while Fed.R.Civ.P. 56(b) allows the "Defending Party" to so move. Defendants City of Syracuse and Lynch appear to have cited to Rule 56(a) when they intended to cite Rule 56(b). For the purposes of this case, there is no substantive difference between the two sections. Therefore, I treat this motion as having been made pursuant to Fed.R.Civ.P. 56(b).

**4.** The defendants have submitted: (1) an affidavit from Dennis Duval, dkt. no. 16; (2) a certification of federal employment for defendants Lynch and Toomey, dkt. no. 27; (3) the declaration of

Bettie Goldman, dkt. no. 30; (4) an affidavit from Toomey, dkt. no 32; (5) an affidavit from Lynch, dkt. no. 33; (6) an affidavit from James Cappola, dkt. no. 35; (7) an affidavit from Kevin Walsh, dkt. no. 36; and (8) a second affidavit from Dennis Duval, dkt. no. 37. Bordeaux has submitted: (1) an affirmation by her attorney Richard M. Holtzberg, with the decision of the New York State Supreme Court, Appellate Division, Fourth Department, attached, dkt. no. 19; and (2) an affirmation by Richard M. Holtzberg, with the September 15, 1989, grand jury proceedings transcripts attached, dkt. no. 18.

required because a disputed issue of material fact exists." *Weg v. Macchiarola,* 995 F.2d 15, 18 (2d Cir.1993). The nonmovant must do more than show that there is "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In short, the nonmovant must demonstrate to the court that issues of fact exist which must be decided by a factfinder because "they may reasonably be decided in favor of either party." *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990).

## II. Claims of False Arrest, False Imprisonment, Malicious Prosecution and Abuse of Process

As a matter of law, I grant *all* defendants' motions for summary judgment as to Bordeaux's Section 1983 claims for false arrest, false imprisonment, malicious prosecution, and abuse of process.

### A. *False Arrest, False Imprisonment, and Malicious Prosecution*

■ Section 1983 claims for false arrest and false imprisonment require the plaintiff to demonstrate a lack of probable cause to make the initial arrest. *Cameron v. Fogarty,* 806 F.2d 380, 386, 386 (2d Cir.1986), *cert. denied,* 481 U.S. 1016, 107 S.Ct. 1894, 95 L.Ed.2d 501 (1987). Similarly, in an action for malicious prosecution, the plaintiff must demonstrate the same absence of probable cause plus show that the proceedings terminated in her favor. *Id.*

■ Following her arrest, a grand jury indicted Bordeaux. A grand jury's indictment "establishe[s], at the very least, a presumption of probable cause." *Woodard v. Hardenfelder,* 845 F.Supp. 960, 967 (E.D.N.Y.1994) (a Section 1983 action in which the court noted that in other contexts the Second Circuit has held that grand jury indictments conclusively establish probable cause). Bordeaux was then convicted of criminal possession of a controlled substance in the first and third degrees. The Second Circuit has held that "[w]here the civil rights plaintiff has been convicted of the offense for which [she] was arrested, we have in effect accepted the fact of that conviction as conclusive evidence of the good faith and reasonableness of the officer's belief in the lawfulness of the arrest." *Cameron,* 806 F.2d at 388; *see also Tavarez v. Reno,* 54 F.3d 109, 110 (2d Cir.1995). The presumption exists even when a conviction has been reversed but is rebuttable by a showing that "the conviction itself was the result of fraud, perjury, or other acts effecting the integrity of the prosecution." *Sassower v. City of White Plains,* 1993 WL 378862, at *2 (S.D.N.Y. 1993).

Although Bordeaux's indictment was eventually dismissed, she fails to allege any instances of fraud, perjury, or corruption. Instead, she relies on the Appellate Division's finding that defendants Lynch and Toomey lacked a predicate for a common law inquiry and reasonable suspicion sufficient to justify seizure and arrest. As discussed below, these findings are not the functional equivalent of a finding of lack of probable cause. Certainly they do not demonstrate fraud, perjury, or other corruption.

### B. *Abuse of Process Claim*

■ The tort of abuse of process is closely allied with the tort of malicious prosecution. *Cook v. Sheldon,* 41 F.3d 73, 80 (2d Cir.1994). An abuse of process claim lies against "a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of process." *Id.* at 80. Because she has not identified any misuse of process, Bordeaux has failed to state a claim on this issue and lacking any allegation to the contrary, I find that Bordeaux's indictment and conviction provide a presumption that process was not abused in her case. Moreover, Bordeaux has failed to identify the "collateral objective" defendants were seeking. *Id.* Therefore, I grant defendants summary judgment on this claim.

## III. Illegal Search and Seizure Claim Against Lynch and Toomey

### A. *Task Force Arrangement and the Federal Defendants*

■ At the outset, I must clarify the employment status of defendants Lynch and

Toomey. On the day of Bordeaux's arrest, Lynch and Toomey were assigned to the Central New York Drug Task Force; a program which operates under the command of the federal Drug Enforcement Administration ("DEA").[5] Bordeaux brought suit against Lynch and Toomey under 42 U.S.C. § 1983. Section 1983 considers constitutional violations of individuals acting under color of state law. 42 U.S.C. § 1983. As federal employees, Lynch and Toomey were not state actors and thus are not amenable to suit under Section 1983. Therefore, I must dismiss plaintiff's claim of illegal search and seizure against defendants Onondaga County, the Onondaga County Sheriff, and the City of Syracuse. I will, however, consider Bordeaux's claims against Lynch and Toomey as properly pleaded under *Bivens v. Six Unknown Named Federal Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); the federal counterpart to Section 1983.[6]

### B. Search and Seizure Claims against Lynch and Toomey

■ Bordeaux claims that Lynch and Toomey violated her Fourth Amendment right to be free from illegal search and seizure. To sustain this constitutional claim, Bordeaux must prove that Lynch and Toomey acted under color of federal law to deprive her of a constitutionally protected right. *Tavarez v. Reno*, 54 F.3d at 110 (citing *Bivens*, 403 U.S. 388, 91 S.Ct. 1999).

Lynch and Toomey argue that as matter of law they did not violate Bordeaux's constitutional rights because probable cause existed. *See* Dkt. No. 8 at 3; Dkt. No. 15 at 6; and Dkt. No 29, at 2.

■ In support of her position, Bordeaux relies heavily on the New York State Supreme Court, Appellate Division, Fourth Department's decision dismissing her criminal indictment. Bordeaux's reliance on the appellate court's holding is misplaced. The Fourth Amendment to the United States Constitution establishes the minimum protection required in a criminal search and seizure. New York State expanded Fourth Amendment protections for its citizens by establishing a four tier method for evaluating the propriety of police encounters; each progressive level allows "a separate degree of police interference with the liberty of the person approached and consequently requires escalating suspicion on the part of the investigating officer." *People v. Hollman*, 79 N.Y.2d 181, 185, 581 N.Y.S.2d 619, 590 N.E.2d 204 (1992). In New York:

[1] If a police officer seeks simply to request information from an individual, that request must be supported by an objective, credible reason, not necessarily indicative of criminality. [2] The common-law right of inquiry, a wholly separate level of contact, is activated by a founded suspicion that criminal activity is afoot and permits a somewhat greater intrusion. [3]

---

**5.** The United States Department of Justice, acting through the Drug Enforcement Agency ("DEA"), enters into task force agreements with participating local law enforcement agencies to undertake joint investigations. *See* 21 U.S.C. § 873(a)(7). At the time of Bordeaux's arrest, the Syracuse Police Department employed officer Lynch and the Onondaga County Sheriff's Department employed officer Toomey. Lynch Aff., Dkt. No. 33 ¶3; Toomey Aff., Dkt. No. 32 ¶3. However, as deputized federal officers assigned to the Task Force, the officers were authorized to exercise the powers of enforcement set forth in 21 U.S.C. § 878. Section 878, as amended, states that "[s]tate and local law enforcement officers performing functions under this section shall not be deemed Federal employees and shall not be subject to the provisions of law relating to Federal employees, except that such officers shall be subject to section 3374(c) of Title 5." 28 U.S.C. § 878(b). However, under 5 U.S.C. § 3374(c), local government employees on detail

to a federal agency are deemed employees of the agency for the purposes of the Federal Tort Claims Act and any other tort liability statute. In support of their status as Task Force officers on the day of Bordeux's arrest, Lynch and Toomey submitted: (1) a certificate of federal employment, dkt. no. 27; (2) a copy of the effective Task Force agreement between both the City of Syracuse and the Onondaga County Sheriff, dkt. nos. 25, 14 (Ex. F); (3) affidavits from the Onondaga County Sheriff, a deputy chief of Police for the City of Syracuse, the Chief of the State & Local Section of the DEA, Lynch, and Toomey. Dkt. Nos. 36, 37, 35.

**6.** *Bivens* actions are typically analyzed using the same methodology as a claim under Section 1983. *See, e.g., Butz v. Economou*, 438 U.S. 478, 498–501, 98 S.Ct. 2894, 2906–08, 57 L.Ed.2d 895 (1978).

Where a police officer has reasonable suspicion that a particular person was involved in a felony or misdemeanor, the officer is authorized to forcibly stop and detain that person. [4] Finally, where the officer has probable cause to believe that a person has committed a crime, an arrest is authorized.

*Id.*, at 184–85, 581 N.Y.S.2d 619, 590 N.E.2d 204 (internal quotations and citations omitted).

In Bordeaux's case, the appellate division held that officers Lynch and Toomey lacked the second element, a predicate to establish a common-law right of inquiry. *Bordeaux*, 182 A.D.2d at 1096, 583 N.Y.S.2d 865.

 However, in this federal civil rights lawsuit, the constitutionality of the search and seizure must be tested under federal law. *United States v. Scopo*, 19 F.3d 777, 785 (2d Cir.), *cert. denied*, 513 U.S. 877, 115 S.Ct. 207, 130 L.Ed.2d 136 (1994). In a federal constitutional analysis, three levels of interaction exist between government agents and private citizens: (1) consensual encounters requiring no justification; (2) investigative detections requiring reasonable suspicion that criminal activity has or is about to occur; and (3) arrests requiring a showing of probable cause. *United States v. Tehrani*, 49 F.3d 54, 58 (2d Cir.1995). In this case all three levels of interaction are implicated.

### 1. *Consensual Encounter*

 Bordeaux's encounter with the officers outside the bus terminal began consensually. Compl. ¶ 27. During this initial encounter, the officers did not violate Bordeaux's Fourth Amendment rights "by merely approaching [her in a] public place, by asking [her] if [she] is willing to answer some questions, by putting questions to [her] if [she] is willing to listen." *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 1323, 75 L.Ed.2d 229 (1983).[7]

When the consensual encounter began the officer knew that: (1) while at the airport Bordeaux and Sweeney appeared to be traveling separately, but then departed by taxi together carrying a black bag, *Bordeaux*, 182 A.D.2d at 1098, 583 N.Y.S.2d 865 (Denman, J. and Balio, J., dissenting); (2) at the motel Sweeney was unable to produce identification in order to register; *id.*; (3) both the airport informant and the motel clerk believed that the women were behaving suspiciously; *id.*; (4) both women checked out of the motel within hours of checking in, *id.*; and (5) the women traveled to the Syracuse bus station carrying the black bag, *id.* During the course of this initial encounter the officers further learned that: (1) Bordeaux's airplane ticket had been issued under the name "Smith," *id.*; (2) Bordeaux and Sweeney were returning to Rochester, New York from a one day trip to Los Angeles, California, *id.*; and (3) both Bordeaux and Sweeney denied having any luggage other than their purses—a fact inconsistent with the officers own observation of Bordeaux loading a black bag into the taxi at the motel, *id.*

### 2. *Investigative Detention*

 Based on all the information they received, the officers had sufficient justification to transform this consensual encounter into a stop under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Under *Terry*, "police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (citing *Terry*, 392 U.S. at 30, 88 S.Ct. at 1884). While any one of the factors known to Lynch and Toomey discovered either before or during the consensual encounter would not amount to a reasonable suspicion, the "totality of circumstances" provided reasonable suspicion entitling the officers to make a limited seizure of Bordeaux. *See Id.*

---

7. Bordeaux alleges that the surveillance "was conducted solely because [she] and her companion were black and were dressed in a flamboyant, but not offensive, style." Compl. ¶ 13. This allegation is no longer considered in a Fourth Amendment analysis in light of the Supreme Court's recent holding that defendants "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren v. United States*, —— U.S. ——, ——, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996).

at 9, 109 S.Ct. at 1586. In addition, having seized Bordeaux, the officers were entitled to remove the luggage from the bus to briefly pursue their investigation. *United States v. Place*, 462 U.S. 696, 706, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110 (1983).

### 3. *An Arrest*

 Officers conducting a *Terry* stop, must employ "the least intrusive means reasonably available to verify or dispel [their] suspicion in a short period of time." *Posr v. Doherty*, 944 F.2d 91, 98 (2d Cir.1991) (internal quotations omitted). Such a stop "can be supported by reasonable suspicion, instead of probable cause." *Id.* With greater intrusiveness, the detention should more properly be characterized as an arrest. *Id.* When "the totality of circumstances indicates that an encounter has become too intrusive to be classified as an investigative detention, the encounter is a full-scale arrest, and the government must establish that the arrest is supportable by probable cause." *Id.* (internal quotations omitted). No particular formality is required for an arrest, "it may occur even if the formal words of arrest have not been spoken provided that the subject is restrained and [her] freedom of movement is restricted." *Id.* at 98. Moreover, "[w]hether an officer has exceeded the least intrusive means of dealing with a suspect and effected an arrest depends on the facts surrounding their encounter, and must be assessed in light of those facts." *Id.*

 During the *Terry* stop portion of the encounter, the officers requested that Bordeaux and Sweeney accompany them into the bus terminal. In addition, the officers removed the black bag from the luggage compartment of the bus and allowed the bus to depart. Defendants argue that "in a measured response to circumstances which gave reasonable suspicion not dispelled by the plaintiff's consensually provided information, [the officers] undertook an investigatory detention which was both brief in duration and reasonable in configuration." Ltr. From AUSA Paula Ryan Conan to Court on 1/22/96, Dkt No. 29, at 3. However, "[t]he issue of precisely when an arrest takes place is a question of fact." *Posr*, 944 F.2d at 99;

*see also Oliveira v. Mayer*, 23 F.3d 642, 645 (2d Cir.1994), *cert. denied*, 513 U.S. 1076, 115 S.Ct. 721, 130 L.Ed.2d 627 (1995). The fact that the officers removed Bordeaux from the line boarding the bus and asked that she accompany them into the bus terminal while allowing her bus to depart, presents sufficient facts from which a jury could find that a *de facto* arrest occurred without probable cause. This determination, however, does not preclude a finding that Lynch and Toomey are qualified immune from suit, a question to which I now turn. *See Oliveira*, 23 F.3d at 648–49.

### C. *Qualified Immunity*

 Under certain circumstances police officers are qualifiedly immune from suit for their investigative acts. *Robison v. Via*, 821 F.2d 913, 920 (2d Cir.1987). For the purposes of immunity law there is no distinction between suits brought against defendants acting under color of state law and those brought directly under the Constitution against federal officers under *Bivens*. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, n. 30, 102 S.Ct. 2727, 2738, n. 30, 73 L.Ed.2d 396 (1982). The standard governing the use of a qualified immunity defense "has evolved into one of objective reasonableness, designed to 'permit the resolution of many insubstantial claims on summary judgment.'" *Robison*, 821 F.2d at 920 (quoting *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738.). The doctrine of qualified immunity shields government employees "from liability for damages on account of their performance of discretionary official functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Ying Jing Gan v. City of New York*, 996 F.2d 522, 531 (2d Cir.1993) (quoting *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738). The immunity accorded officials by this doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

 For a right to be clearly established, the "contours of the right must be sufficiently clear that a reasonable official

would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). In making this determination a court should consider: "(1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." *Ying Jing Gan,* 996 F.2d at 532 (quoting *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991), *cert. denied,* 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992)). The right to be free from arrest without probable cause is clearly established. *Robinson,* 821 F.2d at 921. However, Lynch and Toomey are nonetheless "entitled to qualified immunity as a matter of law if the undisputed facts and all permissible inferences favorable to the plaintiff show either (a) that it was objectively reasonable for the officers to believe that probable cause existed, or (b) that officers of reasonable competence could disagree on whether the probable cause test was met." *Id.*

 In "evaluating probable cause for an arrest [I] must consider those facts available to the officer at the time of the arrest and immediately before it." *Lowth v. Town of Cheektowaga,* 82 F.3d 563, 569 (2d Cir. 1996). I have already detailed the facts surrounding Bordeaux's arrest and I find that reasonable officers could disagree on whether the *Terry* stop escalated into a *de facto* arrest without probable cause. *See Tehrani,* 49 F.3d at 60–62 (holding that defendant's detention in a private airport office for more than 30 minutes after being told that he would miss his flight did not convert the permissible investigatory detention into a *de*

*facto* arrest requiring probable cause). Moreover, "[e]ven law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991) (internal quotations omitted). Because reasonable officers could disagree on the existence of probable cause and whether the detention of Bordeaux escalated into a *defacto* arrest, Lynch and Toomey are qualifiedly immune from Bordeaux's individual constitutional claims.[8] *See Lowth,* 82 F.3d at 569.

## CONCLUSION

Based on the foregoing discussion, it is hereby:

**ORDERED** that, defendants are granted summary judgment dismissing the complaint.[9]

**IT IS SO ORDERED.**

---

**8.** I also find that Lynch and Toomey did not violate Bordeaux's fourth amendment rights when they searched the black bag. During her encounter with the officers, Bordeaux repeatedly denied ownership of the black bag and thus forfeited any reasonable expectation of privacy in the abandoned property. *See U.S. v. Moskowitz,* 883 F.2d 1142, 1147 (2d Cir.1989) (holding that "a warrantless search and seizure of abandoned property does not violate the fourth amendment."); *U.S. v. Lee,* 916 F.2d 814, 818 (2d Cir.1990) (holding that "[w]hen a person voluntarily abandons property [she] forfeits any reasonable expectation of privacy that [she] might have had in the property.").

**9.** The Assistant United States Attorney asks that I dismiss with prejudice any claims plaintiff makes pursuant to the Federal Tort Claims Act ("FTCA"). My reading of the complaint does not indicate an attempt by plaintiff to make an FTCA claim. Therefore, I do not reach this issue.