People v Holz (2018 NY Slip Op 08763)





People v Holz


2018 NY Slip Op 08763


Decided on December 21, 2018


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 21, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., SMITH, CARNI, NEMOYER, AND TROUTMAN, JJ.


798 KA 16-00065

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
DAVID M. HOLZ, DEFENDANT-APPELLANT. 






TIMOTHY P. DONAHER, PUBLIC DEFENDER, ROCHESTER, NATIONAL CONSTITUTION CENTER, PHILADELPHIA, PENNSYLVANIA (LANA M. ULRICH OF COUNSEL), FOR DEFENDANT-APPELLANT.
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (JOSEPH R. PLUKAS OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Supreme Court, Monroe County (Francis A. Affronti, J.), rendered November 24, 2015. The judgment convicted defendant, upon his plea of guilty, of burglary in the second degree. 
It is hereby ORDERED that the judgment so appealed from is affirmed.
Memorandum: Defendant appeals from a judgment convicting him, upon his plea of guilty, of burglary in the second degree (Penal Law
§ 140.25 [2]) as charged in count one of a two-count indictment. Count one of the indictment alleged that defendant committed burglary in the second degree by unlawfully entering a dwelling on October 1, 2014; count two of the indictment alleged that defendant committed a separate act of burglary in the second degree by unlawfully entering the same dwelling on October 3, 2014. Defendant's plea to count one was accepted in full satisfaction of both counts of the indictment.
Defendant now challenges Supreme Court's refusal to suppress jewelry recovered from his person during a police stop on October 3. It is undisputed, however, that the aforementioned jewelry relates solely to the October 3 burglary charged in count two, a crime to which defendant did not plead guilty and of which he does not stand convicted (see generally CPL 220.30 [2]; People v Alexander, 160 AD3d 1370, 1370-1371 [4th Dept 2018], lv denied 32 NY3d 1001 [2018]). Indeed, the two burglaries charged in the indictment occurred "on two different dates and were completely separate and distinct acts, notwithstanding the fact that they occurred at the same location" (People v Suits, 158 AD3d 949, 951 [3d Dept 2018]). Thus, the court's refusal to suppress physical evidence relevant solely to count two is not reviewable on defendant's appeal from a judgment rendered solely on count one (see CPL 710.70 [2]; People v Dorsey, 122 AD2d 393, 394 [3d Dept 1986]; People v Corti, 88 AD2d 345, 350-351 [2d Dept 1982]; People v Rivera, 57 AD2d 811, 811 [1st Dept 1977]; cf. People v Brown, 263 AD2d 613, 614 [3d Dept 1999], lv denied 94 NY2d 877 [2000]).
Our conclusion is rooted in the limits of our appellate jurisdiction. Put simply, "the judgment of conviction on appeal here did not ensue from the denial of the motion to suppress and the latter is, therefore, not reviewable" pursuant to CPL 710.70 (2) (Rivera, 57 AD2d at 811 [emphasis added]; see Corti, 88 AD2d at 350-351). Unlike the dissent, we agree with a well-established line of cases from the First, Second, and Third Departments that CPL 710.70 (2) "should not be read so broadly so as to entitle a defendant who has pleaded guilty in one [count] to appellate review of the denial of a suppression motion in another [count] in which no judgment was rendered but which was covered by the plea" (Dorsey, 122 AD2d at 394; see Corti, 88 AD2d at 350-351; Rivera, 57 AD2d at 811). Although Dorsey and Rivera involved separate indictments rather than separate counts of the same indictment, that distinction is [*2]inconsequential given the "general rule that each count in an indictment is to be treated as if it were a separate indictment' " (Alexander, 160 AD3d at 1370, quoting People v Ardito, 86 AD2d 144, 163 [1st Dept 1982], affd for reasons stated 58 NY2d 842 [1983]).
The dissent conflates reviewability (see CPL 710.70 [2]) with harmlessness (see CPL 470.05 [1]). In this context, the doctrine of reviewability is concerned with whether the judgment "ensu[ed]" from the suppression determination (CPL 710.70 [2]); the doctrine of harmlessness, on the other hand, is concerned with whether there is any " reasonable possibility' " that a reviewable suppression determination " contributed to the plea' " (People v Wells, 21 NY3d 716, 719 [2013], quoting People v Grant, 45 NY2d 366, 379 [1978]). Indeed, the two cases upon which the dissent primarily relies, People v Kendrick (128 AD3d 1482 [4th Dept 2015]) and People v Carpenter (213 AD2d 747 [3d Dept 1995]), address only the potential harmlessness of an undisputedly reviewable suppression determination. Neither Kendrick nor Carpenter examine the threshold question of whether the underlying suppression determinations were reviewable in the first instance.
In Kendrick, the defendant unsuccessfully moved to suppress various drugs and then pleaded guilty to a lesser-included charge of criminal possession of a controlled substance in the second degree in full satisfaction of a seven-count indictment charging him with, among other crimes, two counts of criminal possession of a controlled substance in the first degree (id., 128 AD3d at 1483). On appeal, the People "concede[d] that the [motion] court erred in determining that defendant lacked standing to contest the search, [but] they nevertheless contend[ed] that the error [was] harmless" because, in the People's view, the defendant would have invariably pleaded guilty to the lesser-included charge given the favorable sentencing promise (id. at 1482-1483). We rejected the People's claim of harmless error because "[t]here [was] a reasonable possibility that, had the court granted defendant a suppression hearing and then granted the motion, defendant would not have pleaded guilty" to the lesser-included charge (id. at 1483).
Here, in stark contrast to Kendrick, the issue is not whether the suppression ruling is harmless, but rather whether we have jurisdiction to review that ruling at all given that it is unrelated to the "completely separate and distinct" crime to which defendant pleaded guilty (Suits, 158 AD3d at 951). Kendrick did not consider, much less address, the dispositive jurisdictional issue in this case, namely, whether we can review a suppression ruling that "bore no relation to the charge to which defendant pleaded guilty" (Dorsey, 122 AD2d at 394).
Nor was there any reason to have considered that issue in Kendrick. After all, the defendant pleaded guilty to a lesser-included drug charge that, as we explicitly noted, was "related to cocaine that was the subject of [his] suppression motion" (id., 128 AD3d at 1483). Here, in contrast, defendant pleaded guilty to one of the two independent and discrete crimes charged in the indictment, and the crime to which he pleaded guilty was wholly unrelated to the suppression motion. Thus, unlike this case, it simply cannot be said that the challenged suppression ruling in Kendrick "bore no relation to the charge to which [the] defendant pleaded guilty" (Dorsey, 122 AD2d at 394).
The dissent's reliance on Carpenter is equally unavailing, and that case does not in any way suggest that the Third Department has "abandoned" the rule of Dorsey. In Carpenter, the defendant, a drug dealer, pleaded guilty to murder after the motion court refused to suppress drugs recovered from his residence (id., 213 AD2d at 747-748). According to the Third Department, the murder was an "act of reprisal" stemming from the defendant's belief that the victim, a rival dealer, had previously robbed his associates of drugs and money (People v Carpenter, 240 AD2d 863, 863 [3d Dept 1997], lv denied 90 NY2d 902 [1997]).
Under those circumstances, the drugs at issue in Carpenter were not, as the dissent characterizes, "separate" and "unrelated" to the murder charge to which the defendant pleaded guilty. To the contrary, the drugs supplied the context and motive for the murder and, by refusing to suppress those drugs, the court effectively admitted a significant piece of evidence tying the defendant to the murder. The fact that the defendant did not plead guilty to criminally possessing the subject drugs does not mean that such drugs were "separate" and "unrelated" to the drug-related murder to which he did plead guilty. Put simply, the murder plea in Carpenter "ensu[ed]" from the motion court's refusal to suppress the very evidence that established his motive to commit the murder, and that suppression determination was therefore reviewable on [*3]appeal from the resultant judgment (CPL 710.70 [2]).
By contrast, there is no suggestion in this case that the jewelry recovered by the police on October 3 would or could have been admitted to prove that defendant committed a separate and discrete act of burglary on October 1 — a point that neither defendant nor the dissent disputes. Thus, under the applicable precedent of Dorsey, Rivera, and Corti, the court's refusal to suppress that jewelry is not reviewable pursuant to CPL 710.70 (2) in connection with this appeal. Without a reviewable determination, the question addressed by the dissent — i.e., the potential harmlessness of that determination — is not properly before us. Indeed, when a defendant pleads guilty, we have no power to review any part of a suppression determination that does not fall within the ambit of CPL 710.70 (2) (see Corti, 88 AD2d at 349-351; see generally People v Howe, 56 NY2d 622, 624 [1982]). We therefore affirm the judgment on that ground alone.
Finally, we note that the certificate of conviction incorrectly states that count one of the indictment relates to the October 3 burglary, and that count two relates to the October 1 burglary. The certificate must therefore be corrected to indicate that count one relates to the October 1 burglary, and that count two relates to the October 3 burglary (see generally People v Credell, 161 AD3d 1563, 1565 [4th Dept 2018], lv denied 32 NY3d 1003 [2018]).
All concur except Whalen, P.J., who dissents and votes to reverse in accordance with the following memorandum: I must respectfully dissent inasmuch as I cannot agree with the majority that we are precluded from reaching the merits of defendant's appeal. The majority adopts the interpretation of CPL 710.70 (2) stated in People v Dorsey (122 AD2d 393, 394 [3d Dept 1986]). Initially, the Third Department has abandoned the restrictive interpretation stated in Dorsey. In its subsequent decision in People v Carpenter (213 AD2d 747, 747-748 [3d Dept 1995]), for example, a single indictment charged defendant with, inter alia, two counts of murder in the second degree in connection with a 1992 shooting and multiple counts of criminal possession of a controlled substance as a result of cocaine seized during a search of defendant's residence. Following the court's denial of that part of his omnibus motion seeking to suppress the cocaine, the defendant pled guilty to a single count of murder in the second degree in full satisfaction of the indictment. On appeal, the Third Department addressed the merits of defendant's contention that the court improperly refused to suppress the cocaine even though the cocaine related solely to the separate, unrelated crimes of criminal possession of a controlled substance, to which defendant did not plead guilty. In contrast to Dorsey, the Third Department held in Carpenter that: "Inasmuch as the People did not obtain from defendant a concession that denial of his suppression motion did not influence his decision to plead guilty, nor a waiver of his right to appeal that denial, we are not in a position to determine whether such denial played any part in his decision to plead guilty (see, People v Coles, 62 NY2d 908, 910 [1984]). We note that a conviction on the third count of the indictment (charging criminal possession of a controlled substance in the second degree) would have subjected defendant to the potential of consecutive sentences and mention was made of that fact by defense counsel during plea discussions. Because it is possible that this factor influenced defendant in his decision to plead guilty, the judgment must be reversed" (Carpenter, 213 AD2d at 748-749). If the Third Department were adhering to its prior holding in Dorsey that it is jurisdictionally precluded from reviewing the propriety of a suppression ruling related solely to a count or indictment to which the defendant did not plead guilty, as the majority asserts, then it would have been precluded from even considering whether there was any reasonable possibility that the allegedly erroneous ruling contributed to the defendant's decision to plead guilty.
The Third Department also reached the merits of a suppression motion related to a separate indictment, not just a separate count, that was satisfied as part of a plea agreement in the subsequent case of People v Pasco (134 AD3d 1257, 1257-1258 [3d Dept 2015]). Additionally, as defendant argues in his postargument submission on this appeal, contrary to Dorsey, this Court has previously addressed the propriety of the denial of a suppression motion that related solely to a count of an indictment to which defendant did not plead guilty, but that was nonetheless resolved by the plea (see People v Kendrick, 128 AD3d 1482, 1482-1483 [4th Dept 2015]). Notably, in attempting to distinguish the post-Dorsey cases cited herein, the majority conducts a factual analysis whether the challenged suppression ruling bore any relation to the charge to which the defendant pled guilty, an analysis fundamentally indistinguishable from the issue whether there is any " reasonable possibility that the error contributed to the plea' " (People v Wells, 21 NY3d 716, 719 [2013]; see People v Grant, 45 NY2d 366, 379 [1978]). Thus, it is the majority that is conflating the issues of appellate jurisdiction and harmless error.
In my opinion, the Third Department correctly abandoned Dorsey's restrictive interpretation of CPL 710.70 (2). That subdivision states, "An order finally denying a motion to suppress evidence may be reviewed upon an appeal from an ensuing judgment of conviction notwithstanding the fact that such judgment is entered upon a plea of guilty" (CPL 710.70 [2]). To conclude that defendant's conviction did not ensue from, or "follow as a consequence or result" of (American Heritage Dictionary 595 [4th ed 2000]), Supreme Court's refusal to suppress the relevant evidence here ignores both the plain meaning of the statutory language (see generally People v Andujar, 30 NY3d 160, 163 [2017]) and the judicial recognition that an improper suppression determination can affect the knowing and voluntary nature of the bargained-for plea agreement with respect to all counts or indictments encompassed therein, not just the counts or indictments to which the determination directly relates (see People v Clark, 45 NY2d 432, 440 [1978], rearg denied 45 NY2d 839 [1978]; People v Rosa, 30 AD3d 905, 908 [3d Dept 2006], lv denied 7 NY3d 851 [2006]; People v Puckett, 270 AD2d 364, 364-365 [2d Dept 2000]; see generally Wells, 21 NY3d at 719; Grant, 45 NY2d at 379; People v Ramos, 40 NY2d 610, 618-619 [1976]; Kendrick, 128 AD3d at 1483; People v Brinson, 186 AD2d 1063, 1063 [4th Dept 1992]).
Further, defendant's plea of guilty to burglary in the second degree for the October 1, 2014 incident satisfied the pending charge of burglary in the second degree for the October 3, 2014 incident, as expressly stated in defendant's certificate of conviction. As such, this ensuing judgment has precedential implications with respect to the separate burglary; it precludes the People from prosecuting defendant again for the October 3, 2014 crime (see CPL 40.20 [1]; 40.30 [1] [a]; 220.30 [2]) and, in contrast to a mere arrest or an unproven charge, the People may inquire at trial into the underlying acts of this incident in any future prosecution of defendant because it is not a dismissal on the merits (see People v Walker, 66 AD3d 1331, 1332 [4th Dept 2009], lv denied 13 NY3d 942 [2010]). I therefore reject the narrow interpretation of CPL 710.70 (2) announced in Dorsey and adopted by the majority here.
In rejecting Dorsey, I am not asserting that the fact that a defendant seeks review of a suppression motion that pertains solely to a count or an indictment to which the defendant did not expressly plead guilty has no relevance. Although an erroneous suppression ruling can influence a defendant's decision whether to plead guilty, "a guilty plea entered after an improper court ruling may be upheld if there is no reasonable possibility that the error contributed to the plea' " (Wells, 21 NY3d at 719, quoting Grant, 45 NY2d at 379). Thus, under certain circumstances, the limited nature of a particular suppression ruling may establish that there was no reasonable possibility that any error with respect thereto contributed to the defendant's decision to plead guilty (see People v Lloyd, 66 NY2d 964, 965 [1985]; People v Clanton, 151 AD3d 1576, 1579 [4th Dept 2017]; People v McLaughlin, 269 AD2d 858, 858-859 [4th Dept 2000], lv denied 95 NY2d 800 [2000]). I cannot agree with the majority, however, that "the limits of our appellate jurisdiction" preclude this Court from reviewing the suppression ruling here.
Further, I cannot conclude that there is no reasonable possibility in this case that the denial of defendant's suppression motion contributed to his decision to plead guilty (see Wells, 21 NY3d at 719). The parties agree that defendant pled guilty to one count of burglary in the second degree in exchange for a sentencing promise of six years' imprisonment plus five years' postrelease supervision. If defendant had gone to trial on both counts, he would have faced the possibility of consecutive sentences totaling at least 12 years' imprisonment for the separate burglaries (see Penal Law §§ 70.06 [3] [c]; 140.25 [2]; People v Suits, 158 AD3d 949, 951 [3d Dept 2018]). The transcript of the plea colloquy reveals that neither the court nor the parties were initially clear as to which of the two separate burglaries defendant was to plead guilty, and he allocuted to facts relevant to both counts. Indeed, as the majority notes, even the certificate of conviction confused the two counts. I therefore cannot conclude that defendant understood that, by pleading guilty to count one rather than count two of the indictment, he was waiving his right to seek appellate review of the suppression determination. Further, "the People did not obtain from defendant a concession that denial of his suppression motion did not influence his decision to plead guilty, nor a waiver of his right to appeal that denial" (Carpenter, 213 AD2d at 748), although such conditions could have been included as part of the offered plea agreement.
Thus, defendant is entitled to review of the merits of the court's refusal to suppress physical evidence obtained after police officers allegedly stopped and detained him without the requisite reasonable suspicion to do so. At a suppression hearing, two of the four police officers [*4]involved in the stop of defendant testified and their testimony established that, at approximately 4:00 p.m. on October 3, 2014, a police officer was dispatched to an Irondequoit neighborhood in response to a report of "a suspicious person" wearing a gray hooded sweatshirt and brown pants who "could have possibly been involved in a burglary that occurred a day or so ago." Upon the officer's arrival at the reported location, a mail carrier pointed down the road and told the officer that "[h]e's down there," without further elaboration. Although unknown to the officer at the time, the mail carrier was subsequently identified as the person who reported seeing a suspicious person. The officer traveled in the direction indicated by the mail carrier and observed defendant wearing clothing matching the description provided in the dispatch. Upon exiting his patrol car, the officer noticed that defendant was "sweaty and fidgety" and asked defendant to take his hands out of his pockets. When defendant complied, the officer did not "know if [defendant] was trying to conceal something or what but [the officer] did notice that there was something in one of his hands." When the officer asked what it was, defendant "showed [the officer] a plastic bag, and in the plastic bag [there] appeared to be jewelry." The officer took possession of the bag of jewelry.
Three additional officers joined the first officer, one of whom was aware of a burglary in the neighborhood several days prior during which a laptop computer had been stolen. An officer then asked defendant where he obtained the jewelry, and defendant responded that he had purchased it at a nearby yard sale. An officer next asked defendant whether he would accompany them to the yard sale "to confirm with whoever was running the sale that he indeed purchased the jewelry from them." Defendant agreed to do so, and he was placed in the back of a patrol vehicle for approximately 5 to 10 minutes before the officers transported him to the location provided by defendant. At that location, while defendant remained in the back of the patrol car, the officers questioned the woman running the yard sale about the jewelry, and she stated that it had neither been sold by her, nor did she recognize it.
Notably, the People withdrew their CPL 710.30 notice of the intention to offer evidence of defendant's statements during that encounter, and the People offered no further evidence at the hearing to establish if or when the officers obtained sufficient information to conclude that defendant had stolen the jewelry during a second, separate burglary that occurred at the same location as a prior burglary, during which the laptop computer had allegedly been stolen.
I agree with defendant that the court erred in refusing to suppress the jewelry. "It is well established that, in evaluating the legality of police conduct, [a court] must determine whether the action taken was justified in its inception and at every subsequent stage of the encounter' " (People v Burnett, 126 AD3d 1491, 1492 [4th Dept 2015]; see People v De Bour, 40 NY2d 210, 215 [1976]). "In De Bour, the Court of Appeals set forth a graduated four-level test for evaluating street encounters initiated by the police: level one permits a police officer to request information from an individual and merely requires that the request be supported by an objective, credible reason, not necessarily indicative of criminality; level two, the common-law right of inquiry, permits a somewhat greater intrusion and requires a founded suspicion that criminal activity is afoot; level three authorizes an officer to forcibly stop and detain an individual, and requires a reasonable suspicion that the particular individual was involved in a felony or misdemeanor; [and] level four, arrest, requires probable cause to believe that the person to be arrested has committed a crime' " (Burnett, 126 AD3d at 1492, quoting People v Moore, 6 NY3d 496, 498-499 [2006]).
In refusing to suppress the physical evidence here, the court concluded that "the information provided by the [mail carrier] was deemed to be reliable, coupled with the defendant's physical description and clothing, both of which were previously noted during the earlier dispatch, sufficiently specific and corroborating . . . , [and defendant] was seen in close spatial and temporal proximity to where a crime or crimes had recently occurred." The court therefore concluded that the first responding officer "possessed a suspicion of criminality when approaching and detaining [defendant]." The court further concluded that defendant's detention was appropriately based on that officer's "initial reasonable suspicion that a crime had been committed and that the defendant was the perpetrator, ultimately leading to his legal arrest, based upon requisite probable cause. Further, the subsequent search and seizure of physical property was supported by probable cause."
Here, given the specificity of the clothing description, the anonymous report of a [*5]"suspicious person" who "could have possibly been involved in a burglary" is arguably an objectively credible reason for the first officer's initial approach of defendant. According to his own testimony, however, at no point did the officer ask any " basic, nonthreatening questions regarding, for instance, identity, address or destination' " appropriate for a first level De Bour inquiry (People v Garcia, 20 NY3d 317, 322 [2012]; cf. Burnett, 126 AD3d at 1492-1493). Instead, the officer directed defendant to remove his hands from his pockets and then began questioning defendant regarding the plastic bag of jewelry in defendant's hand. Even assuming, arguendo, that the officer's observation that defendant might have been "trying to conceal something" warranted the officer's pointed questions regarding the provenance of the jewelry (cf. People v Bordeaux, 182 AD2d 1095, 1095-1096 [4th Dept 1992], appeal dismissed 80 NY2d 915 [1992]), it is my position that the court erred in concluding that the officers had a reasonable suspicion that defendant was involved in criminal activity warranting the immediate seizure of the jewelry and warranting the subsequent detention of defendant in the back of a patrol car for approximately 30 minutes while they investigated the provenance of the jewelry.
Contrary to the court's conclusion, the information communicated by the dispatcher to the officers was insufficient to provide the requisite reasonable suspicion for the seizure of the jewelry and defendant's detention. Initially, "whether a person is suspicious' is the ultimate determination that is to be reached by the officer on the basis of his or her own observations and experience" (People v Carney, 58 NY2d 51, 54 [1982]). In this case, the source of the report of the "suspicious person," although subsequently identified as the mail carrier, was never disclosed to the officers involved prior to defendant's detainment. "An anonymous tip cannot provide reasonable suspicion to justify seizure, except where that tip contains predictive information—such as information suggestive of criminal behavior—so that the police can test the reliability of the tip" (Moore, 6 NY3d at 499). The civilian report here contained no such predictive information. Further, although the report accurately identified items of clothing worn by defendant, "reasonable suspicion requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person' " (id., quoting Florida v J.L., 529 US 266, 272 [2000]). The hearing testimony also fails to support the court's conclusion that defendant was found "in close spatial and temporal proximity to where a crime or crimes had recently occurred" inasmuch as the civilian report indicated no more than the possible involvement of the suspicious person in an unspecified burglary days prior.
Thus, "to elevate the right of inquiry to the right to forcibly stop and detain, the police [officers were required to] obtain additional information or make additional observations of suspicious conduct sufficient to provide reasonable suspicion of criminal behavior" (id. at 500-501). Reasonable suspicion is defined as "the quantum of knowledge sufficient to induce an ordinarily prudent and cautious [person] under the circumstances to believe criminal activity is at hand" (People v Cantor, 36 NY2d 106, 112-113 [1975]). "It may not rest on equivocal or innocuous behavior' that is susceptible of an innocent as well as a culpable interpretation" (People v Brannon, 16 NY3d 596, 602 [2011]). "A stop based on reasonable suspicion will be upheld so long as the intruding officer can point to specific and articulable facts which, along with any logical deductions, reasonably prompted th[e] intrusion' " (id., quoting Cantor, 36 NY2d at 113).
Here, by his own admission, the officer who initially stopped defendant "did nothing to verify or substantiate the information received over the radio" (De Bour, 40 NY2d at 222), and he therefore had no personal knowledge that a burglary had in fact occurred in the neighborhood, of how many days prior that crime might have occurred, or of what, if anything, had been stolen during the commission thereof. Neither testifying officer articulated what facts he observed or logical deductions he made that caused him to find defendant's possession of that particular jewelry suspicious (see Cantor, 36 NY2d at 113; cf. People v Moore, 47 NY2d 911, 912 [1979], revg for reasons stated in dissenting opn 62 AD2d 155 [1st Dept 1978]). The possession of jewelry is not illegal, and the one officer who did have knowledge of a recent burglary in the neighborhood conceded that, at the time defendant was detained, he was unaware of any missing jewelry. Further, although defendant was observed to be "sweaty and fidgety," an individual's nervousness upon being questioned by police, even when combined with additional factors such as inconsistent statements, provides no indication of criminality that would justify further detention (see People v Milaski, 62 NY2d 147, 156 [1984]). Finally, the fact that defendant's assertion that he purchased the jewelry at a nearby yard sale was later established to be false cannot validate a forcible detention that was not justified at its inception (see Moore, 6 NY3d at [*6]498).
I would therefore reverse the judgment, vacate the plea, grant that part of the omnibus motion seeking to suppress physical evidence seized as a result of the unlawful October 3, 2014 detention, and remit the matter to Supreme Court for further proceedings (see CPL 470.55 [2]).
Entered: December 21, 2018
Mark W. Bennett
Clerk of the Court